1  RONALD P. ACKERMAN (SBN 159692)
   OSHEA V. ORCHID (SBN 298375)
2  **PUBLIC EMPLOYEES LEGAL, LLP**
   400 Corporate Pointe, Suite 560
3  Culver City, CA 90230
   Telephone:      (310) 853-6945
4  Telecopier:     (310) 649-4045
5
6  Attorneys for Plaintiff Justin Vincent
7
8
9            **UNITED STATES DISTRICT COURT OF CALIFORNIA**
10                        **EASTERN DISTRICT**
11

12  JUSTIN VINCENT,                          )   **No.**
                                             )
13            Plaintiff,                      )   **COMPLAINT FOR DAMAGES**
                                             )
14      vs.                                  )   1. Retaliation in Violation of *Labor Code*
                                             )   §1102.5
15  CITY OF CALIFORNIA CITY, AND DOES 1      )   2. Violation of 42 U.S.C. § 1983 – Due
16  THROUGH 400, INCLUSIVE,                  )   Process
                                             )   3. Violation of 42 U.S.C. § 1983 – First
17            Respondents.                    )   Amendment
                                             )   4. Violation of Firefighter's Bill of
18  _____  )   Rights, Govt. Code §§3250 et seq.
                                                 5. Retaliation in Violation of FEHA
19
20                                               **DEMAND FOR JURY TRIAL**
21
22
23                      **GENERAL ALLEGATIONS**
24      1.      At all relevant times, JUSTIN VINCENT ("Plaintiff") was and is an African
    American male, resident of Kern County, State of California, and was and is a competent adult.
25      2.      Plaintiff is informed and believes and thereon alleges that, at all times relevant
26  hereto, Defendant, City of California City was a municipal entity organized and existing under the
27  laws of the State of California.
28

                                        -1-
                            COMPLAINT FOR DAMAGES

3.    Plaintiff, was employed as the Fire Chief by the City of California City (hereinafter "The City").

4.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendant sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiff, who therefore sues Defendant by such fictitious names.  Plaintiff is informed and believes, and based thereon alleges, that the Defendant designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and caused injury and damage proximately thereby to Plaintiff as hereinafter alleged.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendant designated hereinafter as DOES when the same have been fully ascertained.

5.    Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, the Defendants were the agent(s), servant(s), employee(s), co-venturer(s), and co-conspirator(s) of each of the remaining Defendants, and was at all times herein mentioned, acting within the course, scope, purpose, consent, knowledge, ratification, and authorization for such agency, employment, joint venture and conspiracy.

6.    Plaintiff is informed and believes, and based thereon alleges, that each and all of the acts and omissions alleged herein were performed by, and/or attributable to the Defendant, acting as agents and/or employees, and/or under the direction and control of each of the other Defendants, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.  Plaintiff is informed and believes, and thereon alleges, that at all times material hereto, Defendant were and are the agents of each other.

7.    Plaintiff has complied with and/or exhausted any applicable claims statutes, and/or administrative and/or internal remedies and/or grievance procedures, or is excused from complying therewith.  Attached hereto as Exhibit "1" is a true and correct copy of the Government Claim filed by Plaintiff. Attached hereto as Exhibit "2" is a true and correct copy of the City's Notice of Action on Claim.

### Factual Background

8.    JUSTIN VINCENT ("Plaintiff") was hired as Fire Chief by the City of California City on May 2, 2017.

9.    As the Fire Chief, he was responsible for fire service administration, and operations. Under the City's municipal code, Plaintiff also served as the City's fire code official,

responsible for the Fire Department's law enforcement function, enforcing the California State Fire Code, which the City adopted in its entirety, incorporating it into the City's municipal code.

10.    The day Plaintiff was sworn in, the City also granted over thirty Marijuana growing businesses, conditional permits.

11.    Plaintiff was tasked with working with the Marijuana businesses seeking permits to build Marijuana growing facilities.

12.    Plaintiff was pressured by City Officials to be 'business friendly' to these Marijuana businesses and allow them to obtain permits without meeting the requirements of the Fire Code.

13.    Plaintiff was offered and refused to accept bribes from local Marijuana Business owners.

14.    Plaintiff reported this pressure, from City Officials and local Marijuana business owners, to the City's Human Resources Department.

15.    The City failed to document or investigate Plaintiff's reports of bribery and improper pressure from City officials.

16.    On July 25, 2017, Plaintiff presented the City Council with a Marijuana impact report, outlining the fire and safety dangers that are associated with the Marijuana industry. He included recommendations for training, personnel, and resources needed to safely serve the community based on local, county, state, federal, and international standards.

17.    City Council Members, including Mayor Jennifer Wood, expressed concern that following Plaintiff's recommendations for safety measures would be too costly.

18.    Public Works Director, Craig Platt, told Plaintiff during the meeting that Plaintiff was going to "kill the town."

19.    Following Plaintiff's report and refusal to allow exceptions for Marijuana businesses, he was subjected to retaliation by City Officials and Marijuana business owners.

20.    Plaintiff was threatened repeatedly by Finance Director and Assistant City Manager Jeannie O'Laughlin. O'Laughlin would repeatedly remind Plaintiff that he was still on probation and that he needed to ease up on the Marijuana industry or he was not going to pass probation. Plaintiff reported these threats to the Human Resources Department.

21.    The City failed to document or investigate the Plaintiff's complaints related to threats from Assistant City Manager Jeannie O'Laughlin.

22.    On September 11, 2017, Plaintiff attended a memorial event held at the California City High School. This event, held every year, featured public officials, including fire department

COMPLAINT FOR DAMAGES

and law enforcement personnel. At the event, Mayor Wood walked down the line of city officials shaking their hands. Mayor Wood very purposely shook the hand of all of the officials in line before and after Plaintiff, but walked around Plaintiff himself. Mayor Wood then hugged one of the other law enforcement personnel at the event Lieutenant Frank Huizar. Community members at the event reported that they believed Mayor Wood would not shake Plaintiff's hand because she was overtly racist. Multiple third party complaints were made to the City regarding this incident and Plaintiff reported what had transpired to Human Resources.

23.    The City failed to document or investigate the complaints related to the September 11, 2017 event.

24.    Following the event and after reporting it, the Plaintiff had a conversation about the inequitable treatment from Mayor Wood with a new Human Resources staff person, Anna Linn. During the conversation he indicated that he did not believe he was being treated fairly, and that that treatment could be related to his race as many people believed. He also indicated that many people believed a common place rumor that Mayor Wood was having an affair with Lieutenant Frank Huizar and that it was impacting her decisions with regard to City personnel matters.

25.    On October 4, 2017, Plaintiff attended a directors meeting at City Hall. During the meeting, Finance Director Jeannie O'Laughlin aggressively berated Plaintiff over his recommendation that two of the City's Firefighters receive paramedic training. After the meeting, Plaintiff lodged a complaint with the City Manager and the City's Human Resources Department.

26.    The City failed to document or investigate the Plaintiff's complaints related Assistant City Manager Jeannie O'Laughlin's conduct on October 4, 2017.

27.    On or about October 11, 2017, Plaintiff received reports that Code Enforcement officer Ron Robbins had gotten unauthorized access to a TLOxp, a restricted Transunion background search account, and had been conducting unauthorized searches through the City's account. Several searches were made while Robbins was off work and outside of the City's facilities. One search in particular, was conducted at midnight and was found to be of a community member, who was a well-known political opponent of Mayor Wood. This prompted concerns that the search may have been conducted at the behest of Mayor Wood.

28.    Working with Fire Department and Human Resources Department staff, Plaintiff determined that Robbins would be terminated on November 20, 2017.

29.    Assistant City Manager Jeannie O'Laughlin put a halt to the termination telling Plaintiff it was a 'witch hunt' and commending Robbin's performance.

30.    Robbins was eventually terminated after Plaintiff pressed the issue, with the City Manager's and City Attorney's offices.

31.    On November 21, 2017, Plaintiff received a performance evaluation. This glowing review from City Manager Tom Weil, marked Plaintiff as "exceeds expectations" in every category. Weil noted, "Chief Justin is definitely a hands on individual who doesn't hesitate to lead by example! He and his team were recently credited for a lifesaving event of a new born infant and were recognized for their efforts with the award of the Fire Services Life Saving Medal."

32.    Along with the positive comments about Plaintiff's performance, the evaluation also emphasized he should be cooperative in working with the Marijuana industry referring to this as "new industry development."

33.    On November 28, 2017, City Manager Weil retired from his position and the position was filled by Interim City Manager Robert Stockwell.  From the time he was appointed, Stockwell met and communicated frequently with Mayor Wood.

34.    Stockwell told the City's managers, including Plaintiff, that the City's primary objective was to get Marijuana businesses up and running and that should be done at all costs.

35.    In early December of 2017, Stockwell met with Plaintiff alone and they discussed the Fire Code requirement of putting sprinklers in Marijuana growing facilities.  Stockwell emphasized that the City needed to make it as easy as possible for Marijuana businesses to start bringing revenues into the City.

36.    Plaintiff told Stockwell that the City had to enforce the Fire Code and explained the safety reasons why the Fire Code was in place.  Stockwell indicated that he did not agree that the Fire Department should require the Marijuana growing operations to put sprinklers in their facilities as required by the Fire Code.

37.    On December 15, 2017, Plaintiff was investigated.  City Manager Robert Stockwell, made it clear to Plaintiff he would prefer that the investigation took place without a representative present.  Plaintiff insisted on having a representative present.

38.    Plaintiff was questioned about a conversation he had with the Marijuana business owner who Plaintiff had refused to accept bribes from, Josh Miester. He was also questioned about a conversation he had with Miester's neighbor, and a conversation he had with Human Resources staff regarding disparate treatment from City management and Mayor Wood.

39.    Plaintiff was additionally questioned about whether he had discussed Mayor Wood having an extra marital affair with either Lieutenant Frank Huizar or another City Council Member.

40.     On the morning of December 18, 2017, Plaintiff was called out to assist the Police Department with a raid on an illegal Marijuana growing operation in the City.

41.     Later that day, Plaintiff was terminated by Interim City Manager Stockwell. Stockwell did not provide Plaintiff with any basis for the decision to terminate his employment.

42.     City Manager Stockwell told other City staff that he did not approve of Plaintiff's participation in the raid on an illegal Marijuana growing operation because the Fire Department should not be involved in law enforcement against Marijuana operations.

43.     On January 7, 2018, Plaintiff met with Interim City Manager Stockwell at Stockwell's residence. Stockwell refused to explain the reasons for Plaintiff's termination and said that he never would. Stockwell said Plaintiff had accused Stockwell of being racist, and also raised the issue of Plaintiff insisting Marijuana growing operations put sprinklers in their facilities. Stockwell told Plaintiff that the Fire Code is not the law, it is only a recommendation, and that as the Fire Chief, Plaintiff could make exceptions for the Marijuana industry, allowing them to build growing facilities without sprinklers. Plaintiff insisted that the City had adopted, and therefore must follow, the California Fire Code in its entirety.

44.     Shortly after the meeting Stockwell, told Plaintiff he would not reinstate him to his position as Fire Chief.

## FIRST CAUSE OF ACTION

### Retaliation in Violation of *Labor Code* §1102.5

### (Against all Defendants)

45.     Plaintiff re-alleges and incorporates herein by reference, each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

46.     Plaintiff performed all his duties as Fire Chief for the City of California City, exceeding the City's standards.

47.     Plaintiff engaged in legally protected activities under *Labor Code* sections 1102.5 and 1102.6, when he reported to the City of California City violations of the California Fire Code, the California City Municipal Code, local rules and ordinances, and other applicable state and federal statutes and regulations.

48.     Defendant, and the respective officials, supervisors, managers, officers, agents, and employees, retaliated against Plaintiff for engaging in activities protected under *Labor Code* section 1102.5, by subjecting him to multiple adverse employment actions, stand-alone actions and/or an ongoing series of actions, which have caused substantial and material adverse effects on

the terms and conditions of Plaintiff's employment. Said actions of retaliation were a direct violation of *Labor Code* section 1102.5, and pursuant to *Labor Code* section 1102.6, Defendant, has the burden of proof to demonstrate by clear and convincing evidence that each of the adverse employment actions alleged herein would have occurred for legitimate, independent reasons, even if Plaintiff had not engaged in activities protected by *Labor Code* section 1102.5.

49.    A contributing cause for Defendant, engaging in the foregoing adverse employment actions against Plaintiff, was to retaliate against Plaintiff for engaging in the above-described protected activities.

50.    As a result of the aforesaid unlawful actions of Defendant, Plaintiff has lost and may continue to lose income, wages, earnings, earning capacity, overtime, pension, benefits, and other economic loss, in an amount to be proven at time of trial.

51.    As a further legal result of the conduct of Defendant, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, suffering, anguish, humiliation and indignity, as well as other unpleasant physical, mental and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of the illegal and wrongful conduct of Defendant. Plaintiff does not claim that he has suffered any psychiatric illness as a result of the conduct of Defendant.

52.    As a further legal result of the conduct of Defendant, Plaintiff was required, and/or in the future may be required, to engage in the services of health care providers, and incurred expenses for health care, services, supplies, medicines, health care appliances, modalities, and/or other related expenses in a sum to be ascertained according to proof.

53.    As a further legal result of the conduct of Defendant, Plaintiff is entitled to attorneys' fees pursuant to *C.C.P.* 1021.5 and/or other applicable authorities, and costs in an amount according to proof.

54.    As a further legal result of the conduct of Defendant, Plaintiff is entitled to prejudgement interest pursuant to California *Civil Code* division 3287 and/or any other provision of law providing for prejudgement interest.

55.    Defendant's retaliatory actions have already and will continue to substantially and adversely affect Plaintiff's ability to seek other positions, secure and/or increase his earning capacity with regard to employment outside the California City.

//

## SECOND CAUSE OF ACTION

### Violation of 42 U.S.C. § 1983 – Due Process

### (Against all Defendants)

56.    Plaintiff re-alleges and incorporates herein by reference, each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

57.    Defendant's removal of Plaintiff from his duties as Fire Code Official for the City violated Plaintiff's United States Constitutional rights under the Fourteenth Amendment as to procedural due process rights, in violation of 42 U.S.C. § 1983 and article I, sections 7 and 15, of the California Constitution.

58.    The City has adopted the California State Fire Code, including, Section [A] 103.2, which provides that, a fire code official shall not be removed from office except for cause and after full opportunity to be heard on specific and relevant charges by and before the appointing authority.

59.    As Fire Chief, Plaintiff was the City's Fire Code Official.

60.    Defendant unconstitutionally, and under the color of the law, deprived Plaintiff of a property interest, when he was relieved of his responsibilities as the City's Fire Code Official without cause and without an opportunity to be heard.

61.    As a result of the aforesaid unlawful actions of Defendant, Plaintiff has lost and may continue to lose income, wages, earnings, earning capacity, overtime, pension, benefits, and other economic loss, in an amount to be proven at time of trial.

62.    As a further legal result of the conduct of Defendant, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, suffering, anguish, humiliation and indignity, as well as other unpleasant physical, mental and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of the illegal and wrongful conduct of Defendant. Plaintiff does not claim that he has suffered any psychiatric illness as a result of the conduct of Defendant.

63.    Defendant's retaliatory actions have already and will continue to substantially and adversely affect Plaintiff's ability to seek other positions, secure and/or increase his earning capacity with regard to employment outside the California City.

//

//

//

## THIRD CAUSE OF ACTION

### Violation of 42 U.S.C. § 1983 - First Amendment

### (Against all Defendants)

64.    Plaintiff re-alleges and incorporates herein by reference, each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

65.    Defendant's actions deprived Plaintiff of his rights under the First Amendment to the United States Constitution.  Plaintiff brings his claims for damages for the violation of these rights based on 42 U.S.C. § 1983.

66.    When Plaintiff told Human Resources employee, Anna Linn, that Mayor Wood was engaging in inequitable treatment of City law enforcement personnel and was rumored to be biased in making personnel decisions, due to being engaged in an affair with Lieutenant Frank Huizar, he discussed a matter of public concern.

67.    In retaliation, Defendant investigated Plaintiff, and terminated his employment.

68.    This action was taken to dissuade Plaintiff from speaking out on matters of public concern.

69.    As a result of the aforesaid unlawful actions of Defendant, Plaintiff has lost and may continue to lose income, wages, earnings, earning capacity, overtime, pension, benefits, and other economic loss, in an amount to be proven at time of trial.

70.    As a further legal result of the conduct of Defendant, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, suffering, anguish, humiliation and indignity, as well as other unpleasant physical, mental and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of the illegal and wrongful conduct of Defendant. Plaintiff does not claim that he has suffered any psychiatric illness as a result of the conduct of Defendant.

71.    Defendant's retaliatory actions have already and will continue to substantially and adversely affect Plaintiff's ability to seek other positions, secure and/or increase his earning capacity with regard to employment outside the California City.

//
//
//
//

COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION

### Violations of Firefighter's Bill of Rights

### Govt. Code §3254

### (Against all Defendants)

72.     Plaintiff re-alleges and incorporates herein by reference, each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

73.     Defendant terminated Plaintiff in violation of the Firefighter's Bill of Rights Govt. Code §3254 (c) which provides that, a fire chief shall not be removed by a public agency or appointing authority without providing that person with written notice, the reason or reasons for removal, and an opportunity for administrative appeal.

74.     Plaintiff was employed as the City's Fire Chief.

75.     Defendant removed Plaintiff from his position without Plaintiff being provided with written notice, the reason or reasons for removal, and an opportunity for administrative appeal.

76.     As a result of the aforesaid unlawful actions of Defendant, Plaintiff has lost and may continue to lose income, wages, earnings, earning capacity, overtime, pension, benefits, and other economic loss, in an amount to be proven at time of trial.

77.     As a further legal result of the conduct of Defendant, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation and indignity, as well as other unpleasant physical, mental and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type than any person would suffer as a result of the illegal and wrongful conduct of Defendant. Plaintiff does not claim that he has suffered any psychiatric illness as a result of the conduct of Defendant.

78.     Defendant's retaliatory actions have already and will continue to substantially and adversely affect Plaintiff's ability to seek other positions, secure and/or increase his earning capacity with regard to employment outside the California City.

//
//
//
//
//

COMPLAINT FOR DAMAGES

## FIFTH CAUSE OF ACTION

### Retaliation in Violation of FEHA

### Government Code §12940(h), et. seq.

### (Against all Defendants)

79.    Plaintiff re-alleges and incorporates herein by reference, each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

80.    Plaintiff engaged in conduct protected by the FEHA, by complaining of discrimination which he and third parties indicated appeared to be based on his race.

81.    Defendant failed to document or investigate the numerous complaints that Plaintiff was being discriminated against.

82.    Defendant then investigated Plaintiff regarding a conversation in which he reported discrimination.

83.    Thereafter, Defendant terminated Plaintiff's employment.

84.    When Plaintiff asked City Manager Robert Stockwell, why he was terminated Stockwell brought up that he believed that Plaintiff had accused him of being racist.

85.    As a result of the aforesaid unlawful actions of Defendant, Plaintiff has lost and may continue to lose income, wages, earnings, earning capacity, overtime, pension, benefits, and other economic loss, in an amount to be proven at time of trial.

86.    As a further legal result of the conduct of Defendant, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, suffering, anguish, humiliation and indignity, as well as other unpleasant physical, mental and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of the illegal and wrongful conduct of Defendant. Plaintiff does not claim that he has suffered any psychiatric illness as a result of the conduct of Defendant.

87.    Defendant's retaliatory actions have already and will continue to substantially and adversely affect Plaintiff's ability to seek other positions, secure and/or increase his earning capacity with regard to employment outside the California City.

88.    As a direct and proximate result of Defendants conduct, as alleged herein, Plaintiff has been compelled to retain legal counsel, and is therefore entitled to reasonable attorneys' fees and costs of suit, pursuant to Government Code §§ 12940, 12965 subdivision (b).

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff seeks judgment against Defendant for:

1.  Physical, mental and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof;

2.  Loss of wages, income, earnings, earning capacity, overtime, pension, benefits, and other economic damages in a sum to be ascertained according to proof;

3.  Health care, services, supplies, medicines, health care appliances, modalities, and other related expenses in a sum to be ascertained to proof;

4.  Other actual, consequential, and/or incidental damages in a sum to be ascertained according to proof;

5.  Attorneys' fees and costs of suit pursuant to *C.C.P.* 1021.5 and other authorities;

6.  Costs of suit herein incurred;

7.  Prejudgment interest; and

8.  Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: April 13, 2018                   **PUBLIC EMPLOYEES LEGAL, LLP**

By: _____

RONALD P. ACKERMAN
OSHEA V. ORCHID
Attorneys for *Plaintiff*
JUSTIN VINCENT

-12-
COMPLAINT FOR DAMAGES