1  HOWARD B. GOLDS, Bar No. 112626
   howard.golds@bbklaw.com
2  THOMAS M. OCONNELL, Bar No. 298457
   thomas.oconnell@bbklaw.com
3  BEST BEST & KRIEGER LLP
   3390 University Avenue, 5th Floor
4  P.O. Box 1028
   Riverside, CA 92502
5  Telephone: (951) 686-1450
   Facsimile: (951) 686-3083
6

7  Attorneys for Defendant
8  CITY OF CALIFORNIA CITY

9              UNITED STATES DISTRICT COURT

10            EASTERN DISTRICT OF CALIFORNIA

11

12 | JUSTIN VINCENT,                    | Case No. 1:18-cv-00549-LJO-JLT

13 |        Plaintiff,                  | THE CITY OF CALIFORNIA CITY'S
                                          OBJECTIONS AND RESPONSES TO
14 |    v.                             | PLAINTIFF JUSTIN VINCENT'S
                                          STATEMENT OF DISPUTED FACTS
15 | CITY OF CALIFORNIA CITY,          | AND PLAINTIFF JUSTIN VINCENT'S
                                          RESPONSE TO THE CITY OF
16 | AND DOES 1 THROUGH 400,           | CALIFORNIA CITY'S STATEMENT
   | INCLUSIVE,                         | OF UNCONTROVERTED FACTS
17 |                                   | AND CONCLUSIONS OF LAW

18 |        Defendants.                | **[Fed. R. Civ. Proc. Rule 56]**

19

20 [Filed concurrently with:
   1. Reply In Support of Motion for
21    Summary Judgment;
   2. Plaintiff Justin Vincent's Deposition
22    Transcript Excerpts;
   3. Mary Johnson's Deposition Transcript
23    Excerpts;
   4. Robert Stockwell's Deposition
24    Transcript Excerpts;
   5. Anna Linn's Deposition Transcript
25    Excerpts; and
   6. Jennifer Wood's Deposition
26    Transcript Excerpts.]

27

28

29460.00007\32185180.1

THE CITY'S RESPONSE TO PLAINTIFF'S
STATEMENTS OF FACTS

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

Pursuant to Federal Rule of Civil Procedure 56, United States District Court for the Eastern District of California Local Rules 230 and 260, and the Court's Scheduling Order (Dkt. 22), Defendant the City of California City (the "City") hereby submits its objections and responses to Plaintiff Justin Vincent's ("Plaintiff") Statement of Disputed Facts and Plaintiff's Response to the City's Statement of Uncontroverted Facts and Conclusions of Law.

## CITY'S STATEMENT OF UNCONTROVERTED FACTS

| The City's Uncontroverted Facts & Evidentiary Support | Plaintiff's Response & Supporting Evidence | |
|---|---|---|
| **THE CITY OF CALIFORNIA CITY HIRES JUSTIN VINCENT** | | |
| 72. When the parcel tax did not pass in June 2017, Plaintiff understood that the City would have limited general fund revenue and it might need to lay off a large portion of its staff.<br><br>Deposition of Plaintiff Justin Vincent ("Plaintiff Dep."), 32:12-34:13. Declaration of Jennifer Wood ("Wood Decl."), ¶ 5. | 72. When the parcel tax did not pass in June 2017, City officials and management discussed putting the parcel tax on the ballot, generating additional revenues in other ways, and modifying City services to help balance the budget.<br><br>Declaration of Howard B. Golds ("Golds Decl."), ¶ 5, Deposition of Plaintiff Justin Vincent ("Plaintiff Depo."), 32:12-34:9. | 72. OBJECTION: Non-Responsive.<br><br>At issue in this fact is whether Plaintiff understood that the City would have limited general fund revenue and it may need to lay off a large portion of its staff. Plaintiff does not address or dispute this fact.<br><br>DISPUTED.<br><br>The passages that Plaintiff and the City cite here include the following statements by Plaintiff:<br><br>*Q. After the parcel tax failed in June of 2017, did you have an understanding as to how that would affect the financial condition of California City?* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| | | *A. Yes.* |
| | | *Q. What was your understanding?* |
| | | *A. That we would have limited general fund revenue coming in based upon a lack of a parcel tax.* |
| | | *…* |
| | | *A. There could be a shortage in – a layoff of staff. There could be a chance for another tax. The City may need to look at other ways of generating revenue.* |
| | | Plaintiff Dep., 32:12-34:9. |

**IN THE MIDST OF THE CITY'S BUDGET CRISIS, PLAINTIFF REQUESTED MILLIONS OF DOLLARS IN NEW EXPENSES FOR HIS FIRE DEPARTMENT**

| | | |
|---|---|---|
| 73. After the citizens of the City voted down the parcel tax in June 2017, the City's financial condition became worse and the Fire Department was in a "deficit reserve position."<br><br>Amended Complaint, ¶ 18 (Dkt. 15). Declaration of Anna Linn ("Linn Decl."), Exh. G (July 25, 2017 Special Sessions Agenda, p. 142). Linn Decl., ¶¶ 3-5. | 73. The Fire Department was not in a deficit reserve position during Plaintiff's employment. Finance Director O'Laughlin made representations that this was the case based on her attempts to charge the Fire Department for the cost of building a fire station. The cost of City facilities comes from the general fund so this cost would not be appropriately taken from the Fire Department's operating budget.<br><br>Declaration of | 73. OBJECTION: Lack of Foundation.<br><br>Plaintiff's assertion lacks any cognizable evidence beyond his own conjecture or speculation. Conjecture or speculation is not cognizable evidence. |

| | | | |
|---|---|---|---|
| | | Plaintiff Justin Vincent ("Plaintiff Decl."), ¶ 5. | |
| 74. | Through Plaintiff's "Marijuana Impact Report," Plaintiff's recommendations could result in the hiring of 25 additional employees which would essentially double the size of the fire department.<br><br>Plaintiffs' Dep., 74:2-76:12. Linn Decl., Exh. F (CalCity00808). | 74. Plaintiff's "Marijuana Impact Report," was prepared to educate and inform the City Council as to NFPA 1710 staffing requirements. The phased approach of hiring additional staff to meet NFPA 1710 staffing requirements was requested by City Manager Tom Weil. Chief Vincent spoke with City Manager Weil during his first few months of employment and discussed his concerns with the impacts of building hundreds of commercial structures in California City. His concerns were based on the department's ability to have an adequate staff, equipment, and training to inspect and protect that amount of commercial infrastructure in the City. The number of conditional permits being awarded was beyond what the current fire department staffing, station, equipment, and training capabilities. Mr. Weil told Chief Vincent to investigate the concerns and impacts and report back to him with what he found and what he would need | 75. OBJECTION: Non-Responsive.<br><br>At issue in this fact is whether through Plaintiff's "Marijuana Impact Report," Plaintiff's recommendations could result in the hiring of 25 additional employees which would essentially double the size of the fire department. Plaintiff does not address or dispute this fact.<br><br>DISPUTED.<br><br>The passages that Plaintiff and the City cite here include the following statement by Plaintiff :<br><br>*Q. And is it correct that on page 00807 [of the "Marijuana Impact Report"] you were recommending the hiring of 25 new employees?*<br><br>*A. In order to meet NFPA 1710. NFPA 1710 is the recommended standards for a professional Fire Department. 1720 would be volunteer fire agency. CCFD would have to add these to be able to adequately, effectively and efficiently mitigate a first alarm response at a recommended* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| | to support this venture. Chief Vincent did ample research and then drafted and submitted an impact report to Tom Weil who had the Chief then present it to the City Council.<br><br>Plaintiff Decl., ¶ 3. Golds Decl., ¶ 5, Plaintiff Depo., 73:1-76:12. | *time basis for a high hazard occupancy.*<br><br>Plaintiff Dep., 74:2-76:12. |
| 75. While building a new fire station and purchasing two fire engines would cost the City millions of dollars, even hiring a full-time fire marshal would have a fiscal impact of $236,209.<br><br>Linn Decl., Exh. G (July 25, 2017 Special Sessions Agenda, p. 142). | 76. The cost of hiring a Fire Marshal was approximately $120,000.___ Jeannie O'Laughlin added the $236,209 figure to July 25, 2017, Special Sessions Agenda. She included the outright purchase of a vehicle and equipment, software, and furniture. That is an inaccurate fiscal impact as the vehicle was never authorized for purchase.<br><br>Plaintiff Decl., ¶ 4. | 75. OBJECTION: Lack of Foundation.<br><br>Plaintiff's assertion lacks any cognizable evidence beyond his own conjecture or speculation. Conjecture or speculation is not cognizable evidence. |
| 76. After Plaintiff's presentation of the "Marijuana Impact Report" on July 25, 2017, Plaintiff asserts that the City's former Finance Director Jeanie O'Laughlin (the "City's Finance Director" or "O'Laughlin") and the City's former Mayor Jennifer Wood (the "City's Mayor" or "Wood") first began to subject Plaintiff to discrimination and retaliation. | 76. Plaintiff experienced discrimination and harassment within a few months of being hired, in or around July of 2017.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 34:21-36:14. | 76. OBJECTION: Non-Responsive.<br><br>Plaintiff presented his "Marijuana Impact Report" in July of 2017. Plaintiff does not address or dispute the fact that he did not begin to be subject to discrimination until after he presented his report in July. |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| Amended Complaint, ¶ 21 (Dkt. 15). Plaintiff Dep., 34:21-36:14. | | |

|  | | |
|---|---|---|
| **PLAINTIFF'S ALLEGATIONS OF DISCRIMINATION AND/OR RETALIATION AGAINST O'LAUGHLIN** | | |

| | | |
|---|---|---|
| 77.  Plaintiff claims that O'Laughlin was "grossly disrespectful" during an August 28, 2017 meeting where she was arguing that Plaintiff's request to purchase fire badges was unnecessary because the fire department did not need the badges he was requesting.<br><br>Plaintiff Dep., 125:7-129:21.  Plaintiff Dep., Exh. 13. Declaration of Mary Johnson ("Johnson Decl."), Exh. I. Deposition of Mary Johnson ("Johnson Dep."), 61:6-62:1. | 77.  On August 28, 2017, O'Laughlin was "grossly disrespectful" to Plaintiff, cutting him off and screaming at him while shaking her finger in his face in an aggressive manner.  Plaintiff e-mailed H.R. Manager Mary Johnson to report that O'Laughlin had treated him with disgust and disrespect and that he believed the treatment may be due to the color of his skin.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 125:7-129:21. | 77.  OBJECTION:  Non-Responsive.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds to the fact. |
| 78.  Plaintiff bases his allegations of discriminatory and retaliatory behavior against O'Laughlin on his belief that she was more difficult with him than with others because he believes "she had a bias against me for whatever reason."<br><br>Plaintiff Dep., 37:5-38:6. | 78.  O'Laughlin was "grossly disrespectful" to Plaintiff treating him with disgust and disrespect.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 125:7-129:21. | 78.  OBJECTION:  Non-Responsive.<br><br>Plaintiff's response fails to dispute or respond to the City's assertion. |
| 79.  Plaintiff testified that he "saw [O'Laughlin] being a | 79.  Plaintiff believes that O'Laughlin had bias against him because | 79.  OBJECTION:  Non-Responsive. |

| | | |
|---|---|---|
| difficult person to deal with within staff." | she was more difficult with him than other staff. | Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds to the fact. |
| Plaintiff Dep., 37:13-38:3. Johnson Decl., ¶ 5. Johnson Dep., 30:7-31:7. | Golds Decl., ¶ 5, Plaintiff Depo., 37:13-38:3. | |

**PLAINTIFF'S ALLEGATIONS OF DISCRIMINATION AND/OR RETALIATION AGAINST WOOD**

| | | |
|---|---|---|
| 80. Plaintiff testified that prior to his termination he "had discussions with my Fire crew" about the rumor that Wood was having an affair with California City Police Lieutenant Frank Huizar.<br><br>Plaintiff Dep., 82:20-87:2. | 80. The relationship between Mayor Wood and Lieutenant Huizar had become a frequently discussed matter in public forums, on Facebook and around City hall during 2017. Employees and citizens believed that Mayor Wood and Lieutenant Huizar had conspired to remove Police Chief Hurtado from his position and install Lieutenant Huizar as the Chief of Police by falsely accusing Police Chief Hurtado of stealing and reporting him to the District Attorney and FBI. After receiving multiple complaints, the City conducted an investigation into the Mayor's treatment of employees.<br><br>Declaration of Oshea Orchid ("Orchid Decl."), ¶ 3, Ex. 1, Confidential Investigation Report Cal City bates no. 00320, 00325, 00330, 00333, 00361. Orchid Decl., ¶13, Ex. 11, Facebook | 80. OBJECTION: Non-Responsive, Hearsay, and Lack of Foundation.<br><br>Plaintiff fails to respond to the substance of the City's assertion and, instead, inappropriately makes assertions that lack foundation and are based on nothing more than inadmissible hearsay. |

LAW OFFICES OF<br>BEST BEST & KRIEGER LLP<br>3390 UNIVERSITY AVENUE, 5TH FLOOR<br>P.O. BOX 1028<br>RIVERSIDE, CA 92502

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | Discussion 3/3/2018 | |
|---|---|---|
| 81. Plaintiff testified that prior to his termination he had told City staff about the rumor that Wood was having an affair with California City Police Lieutenant Frank Huizar.<br><br>Plaintiff Dep., 82:20-87:2. | 81. On or about December 12, 2017, Plaintiff had a conversation with Anna Linn about inequitable treatment from Mayor Wood and the 9-11 event. During the conversation, Plaintiff indicated he was being treated unfairly, and the treatment could be related to his race. He also indicated that many people believed the rumor that Mayor Wood was having an affair with Lieutenant Frank Huizar and that it was impacting her decisions about City personnel matters.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 88:17-92:14. Declaration of Thomas M. O'Connell ("O'Connell Decl."), ¶ 5, Deposition of Anna Linn ("Linn Depo."), 31:21-32:9. | 81. OBJECTION: Non-responsive.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds to the fact.<br><br>DISPUTED.<br><br>The passage Plaintiff cites from Linn's testimony supports the City's assertion. It states:<br><br>*A. I was at my desk. He comes to the cubical. It's open air. It was not in H.R. confidence. And he said, hey, did you hear about the affair with Jennifer Wood and with Lieutenant Huizar?*<br><br>*And I told him, be quiet, Justin. Yeah. I mean knock it off. I had heard it before. I wasn't shocked by it. It was ridiculous.*<br><br>*And then he added to that, no, no, no, no. It even happened at the Fire Department. Her bobby pins were on the window sill.*<br><br>*At that point I told him to stop, and blew it off, but I thought it was ridiculous. And she doesn't wear bobby pins was my first thought. Her* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

|  |  | *hair is short. But, yeah, he was enjoying – he enjoyed –* |
|--|--|-----------------------------------------------------------|
|  |  | *Q. Telling you?* |
|  |  | *…* |
|  |  | *A. Yeah. He enjoyed – he enjoyed sharing it, and there were other people around.* |
|  |  | Linn Dep., 31:24-32:22. |

## THE CITY HIRES ROBERT STOCKWELL TO SERVE AS INTERIM CITY MANAGER WHO IMMEDIATELY BECOMES CONCERNED WITH PLAINTIFF'S BEHAVIOR

| 82. During the meeting in early December 2017 where Stockwell and Plaintiff discussed the circumstances where the City should require cannabis related businesses to install sprinklers, Stockwell and Plaintiff disagreed about whether the fire department should require all cannabis facilities to install sprinklers.<br><br>Amended Complaint, ¶ 39 (Dkt. 15). Plaintiff Dep., 106:4-15. 226:4-22. Declaration of Robert Stockwell ("Stockwell Decl."), ¶ 7. | 82. In early December of 2017, Stockwell met with Plaintiff and they discussed the Fire Code requirement of putting sprinklers in cannabis growing facilities. Stockwell emphasized that the City needed to make it as easy as possible for cannabis businesses to start bringing revenues 174063.1<br>• • • •<br><br>9<br>5<br>00007\32174063.1<br>E CITY'S<br> PLAINTIFF'S<br>NTS OF FACTS• •<br>4<br><br>cannabis growing operations to put sprinklers in their facilities as required by the Fire Code and | 82. OBJECTION: Non-Responsive.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds facts.<br><br>DISPUTED.<br><br>The passage that the City cited but that Plaintiff did not cite states the following:<br><br>*A. … We spoke in generalities. And the generality was he did not believe that marijuana growing facilities required sprinklers. And I tried to explain that it's – that's not the case, that it depends on how you utilize the occupancy, the location, the firewalls and many other aspects that* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| | instructed Plaintiff to ease up on enforcement of the fire code Plaintiff indicated that he could not follow a direction that would allow fire code violations.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 97:1-103:8, 106:5-25. | *determine and also the benefit of making sure that this is sprinkled if marijuana doesn't work out, and I expressed this to Mr. Stockwell.  If it does not work out since it's still federally illegal, if these buildings are not sprinkled, you can't use them for any other function for storage and you are going to limit reusing of the buildings, you're going to have empty buildings.*<br><br>Plaintiff Dep., 226:4-22. |
| 83. During the meeting in early December 2017 where Stockwell and Plaintiff discussed the circumstances where the City should require cannabis related businesses to install sprinklers, at no point during that meeting did Stockwell state that he wanted Plaintiff to require anything less than what the California Fire Code requires.<br><br>Plaintiff Dep.,106:4-25.  Plaintiff Dep., 221:12-21. Deposition of Robert Stockwell ("Stockwell Dep."), 65:6-66:20. Stockwell Decl., ¶ 8. | 83. Plaintiff told Stockwell that the City had to enforce the Fire Code and explained the safety reasons why the Fire Code was in place. Stockwell indicated that he did not agree with the Fire Department requiring cannabis growing operations to put sprinklers in their facilities as required by the Fire Code.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 106:5-25. | 83. OBJECTION:  Non-Responsive.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds facts.<br><br>DISPUTED.<br><br>The passages that Plaintiff and the City cite here include the following statement by Plaintiff:<br><br>*Q.  If you look at your Complaint at paragraph 39 which is bottom of page 4 it says, "Plaintiff told Stockwell that the City had to enforce the Fire Code and explained the safety reasons why the Fire* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | *Code was in place. Stockwell indicated that he did not agree that the Fire Department should require marijuana growing operations to put sprinklers in their facilities as required by Fire Code"* |
|---|---|---|
| | | *Do you see that?* |
| | | *A. Yes.* |
| | | *Q. In fact, that's what was discussed?* |
| | | *A. Correct.* |
| | | *Q. Although this misstates what Mr. Stockwell was saying because he was actually saying he didn't think it was required by the Fire Code. Correct?* |
| | | *A. No.* |
| | | *Q. Did Mr. Stockwell concede it was required by Fire Code?* |
| | | *A. No.* |
| | | *Q. He didn't agree with you on that. Is that correct?* |
| | | *A. Correct.* |
| | | Plaintiff Dep., 106:4-25. |
| 84. During the meeting in early December 2017 where Stockwell and Plaintiff discussed the circumstances where the City | 84. During the meeting in early December 2017 where Stockwell and Plaintiff discussed the circumstances where the City should | 84. DISPUTED.<br><br>The passages that Plaintiff and the City cite here include the following statement |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| should require cannabis related businesses to install sprinklers, it was Plaintiff's position that the City should require facilities that would be used exclusively to grow cannabis should require those facilities to install sprinklers.<br><br>Plaintiff Dep., 226:4-227:3.  Stockwell Decl., ¶ 7. | require cannabis related businesses to install sprinklers, Plaintiff explained that the requirement to install sprinklers is based on the type of occupancy, the location, the firewalls and other aspects of the project.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 226:4-227:3. | by Plaintiff:<br><br>*A.  … We spoke in generalities.  And the generality was he did not believe that marijuana growing facilities required sprinklers.  And I tried to explain that it's – that's not the case, that it depends on how you utilize the occupancy, the location, the firewalls and many other aspects that determine and also the benefit of making sure that this is sprinkled if marijuana doesn't work out, and I expressed this to Mr. Stockwell.  If it does not work out since it's still federally illegal, if these buildings are not sprinkled, you can't use them for any other function for storage and you are going to limit reusing of the buildings, you're going to have empty buildings.*<br><br>Plaintiff Dep., 226:4-22. |
| 85.  The December 2017 meeting during which Stockwell and Plaintiff discussed the circumstances under which the City should require cannabis related businesses to install sprinklers was about "generalities" and "theoretical" | 85.  Stockwell indicated that he did not agree with the Fire Department requiring cannabis growing operations to put sprinklers in their facilities. Plaintiff explained that the requirement to install sprinklers is based on the type of occupancy, the | 85.  OBJECTION:  Non-Responsive.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds facts.<br><br>DISPUTED.<br><br>The passages that |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| buildings.<br><br>Plaintiff Dep., 226:4-22.  Stockwell Dep., 67:2-68:4.  Stockwell Decl., ¶ 5. | location, the firewalls and other aspects of the project.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 226:4-227:3. | Plaintiff and the City cite here include the following statement by Plaintiff:<br><br>*Q.  The buildings where the marijuana would be grown and then theoretically some harvested and stored, did those buildings and facilities have a name during your conversation with Mr. Stockwell?*<br><br>*A.  They did not have specific names.  We never looked at any specific plans at any point in time.*<br><br>*We spoke in generalities.  And the generality was he did not believe that marijuana growing facilities required sprinklers.  And I tried to explain that it's – that's not the case, that it depends on how you utilize the occupancy, the location, the firewalls and many other aspects that determine and also the benefit of making sure that this is sprinkled if marijuana doesn't work out, and I expressed this to Mr. Stockwell.  If it does not work out since it's still federally illegal, if these buildings are not sprinkled, you can't use them for any other function for storage and you are going to limit reusing* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| | | *of the buildings, you're going to have empty buildings.*<br><br>Plaintiff Dep., 226:4-22. |
| 86. It was Plaintiff's opinion during the meeting between Plaintiff, Stockwell, and O'Laughlin then, and it remains Plaintiff's opinion now, that it was the finance department's job to figure out how to fund the purchase of the ladder truck Plaintiff wanted to purchase and any other expenses that Plaintiff wanted to incur on behalf of the fire department "at whatever cost."<br><br>Plaintiff Dep., 42:15-49:15. | 86. It is Plaintiff's opinion that a fire and police services are essential services to ensure public safety. At the time of the discussion about the purchase of a new ladder truck, the City's Fire Department had not had a working fire engine for two months. It is the Finances Departments job to find a possible funding mechanism as they must balance the entire general fund budget.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 43:16-44:20. | 86. OBJECTION: Non-Responsive.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds facts.<br><br>DISPUTED.<br><br>The passage that the City cited but that Plaintiff did not cite states the following:<br><br>*Q. Did you believe it was their responsibility to provide the money once you identified the need?*<br><br>*A. Can you please – I don't know how to answer that question. I'm sorry.*<br><br>*Q. Well, you believed the City needed this fire engine.*<br><br>*A. Yes.*<br><br>*Q. At whatever cost it was?*<br><br>*A. Yes.*<br><br>Plaintiff Dep., 45:11-22. |
| 87. During the December 2017 meeting | 87. UNDISPUTED. | 87. UNDISPUTED. |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| regarding the ladder truck, O'Laughlin and Stockwell stated at one point that they didn't think it was a very good deal for the ladder truck.<br><br>Plaintiff Dep., 46:13-18. Stockwell Decl., ¶ 11. | | |
| 88. Stockwell was also concerned that Plaintiff had put this item on the City Council agenda without consulting with Stockwell.<br><br>Stockwell Dep., 92:2-94:3. Stockwell Decl., ¶ 12. | 88. In the City, Department heads cannot place items on the City Council Agenda. All agenda items are placed on the Agenda by the City Manager or the Council.<br><br>Plaintiff Decl.,¶ 6. | 88. OBJECTION: Lack of Foundation.<br><br>Plaintiff lacks the personal knowledge necessary to dispute the thoughts or opinions of Stockwell. |
| 89. On or about December 4, another City employee, Anna Linn ("Linn"), reported to Stockwell that Plaintiff had been in City Hall loudly speaking with other City staff members about Plaintiff's belief that Wood was having an affair.<br><br>Stockwell Dep., 92:5-94:3. Stockwell Decl. ¶ 13. Linn Decl. ¶ 7-9. Deposition of Anna Linn ("Linn Dep."), 32:1-33:12. | 89. On or about December 12, 2017, Plaintiff had a conversation with Anna Linn about inequitable treatment from Mayor Wood and the 9-11 event. During the conversation, Plaintiff indicated he was being treated unfairly, and the treatment could be related to his race. He also indicated that many people believed the rumor that Mayor Wood was having an affair with Lieutenant Frank Huizar and that it was impacting her decisions about City personnel matters.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 88:17-92:14. O'Connell Decl., ¶ 5, | 89. OBJECTION: Non-Responsive.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds to the fact.<br><br>DISPUTED.<br><br>The passages that Plaintiff and the City cite here include the following statement by Plaintiff:<br><br>*A. I was at my desk. He comes to the cubical. It's open air. It was not in H.R. confidence. And he said, hey, did you hear about the affair with Jennifer Wood and with Lieutenant Huizar?* |

| | | Linn Depo., 31:21-32:9. | *And I told him, be quiet, Justin. Yeah. I mean knock it off. I had heard it before. I wasn't shocked by it. It was ridiculous.* |
|---|---|---|---|
| | | | *And then he added to that, no, no, no, no. It even happened at the Fire Department. Her bobby pins were on the window sill.* |
| | | | *At that point I told him to stop, and blew it off, but I thought it was ridiculous. And she doesn't wear bobby pins was my first thought. Her hair is short. But, yeah, he was enjoying – he enjoyed –* |
| | | | *Q. Telling you?* |
| | | | *…* |
| | | | *A. Yeah. He enjoyed – he enjoyed sharing it, and there were other people around.* |
| | | | Linn Dep., 31:24-32:22. |
| 90. When Linn reported to Stockwell that Plaintiff had been in City Hall loudly speaking with other City staff members about his belief that Wood was having an affair, Linn explained to Stockwell that Plaintiff spent significant amounts of time in City Hall going from cubical to cubical gossiping with City staff members. | 90. This conversation was overheard by O'Laughlin who reported it to Mayor Wood. Mayor Wood called Linn late that evening very upset about Plaintiff's comment. The next morning, on or about December 13, 2017, Mayor Wood met with Stockwell at 8:15am to complain about Plaintiff discussing the alleged affair. Mayor Wood | 91. OBJECTION: Non-Responsive.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds to the fact.<br><br>DISPUTED.<br><br>Plaintiff's counsel failed to ask questions during the deposition that would elicit this response |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| Stockwell Dep., 92:5-94:3. Stockwell Decl., ¶ 14. Linn Decl., ¶ 9. Linn Dep., 55:23-56:11. | was very upset, slamming her phone down and demanding that Stockwell do something to prevent Plaintiff from continuing to discuss her having an affair with Lieutenant Huizar.<br><br>Golds Decl., ¶ 7, Deposition of Mayor Jennifer Wood ("Wood Depo."), 36:1 – 40:21. O'Connell Del., ¶ 5, Linn Depo., 51:11 – 57:21. | even though Plaintiff's counsel was in possession of Linn's declaration in support of Motion for Summary Judgment.<br><br>Relevant here, Linn testified as follows:<br><br>*Q. Did Stockwell ask you exactly what was said during the conversation with Vincent?*<br><br>*A. Yes.*<br><br>*…*<br><br>*Q. And what did you relay to him?*<br><br>*A. That he came to my cubicle carelessly in open air and, indeed said those – said that she was having an affair with Huizar.*<br><br>Linn Dep., 55:23-56:11. |
| 91.  During Plaintiff's confrontation with the Meisters in the foyer of City Hall, Plaintiff and Meister discussed an allegation that Plaintiff had been "suspended from his previous employment for some type of allegation having to do with children."<br><br>Plaintiff Dep., 109:10-16. | 92.  Meister made an allegation that Plaintiff had been suspended from his previous employer for an allegation having to do with a child.  Plaintiff told him that there was never an investigation related to any misconduct with children.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 109:10-16. | 91.  OBJECTION: Non-Responsive.<br><br>Plaintiff's response does not dispute to the City's assertion.<br><br>DISPUTED.<br><br>The passages that Plaintiff and the City cite here include the following statement by Plaintiff:<br><br>*A. And they started off immediately with they heard some unsettling or some terrible things about* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

1  | | | *me.*

2  | | | *And I followed up with, "I'm not sure what you're talking about." They went into some – they alluded to me having been on – being suspended from – at my previous employment for some type of allegation having to do with children.*

9  | | | *Q. Was that in reference, to your understanding, to your employment at Tulare County?*

12 | | | *A. Yes.*

13 | | | *Q. Say anything else?*

14 | | | *A. The conversation proceeded that that was incorrect. And I confirmed at my previous employment I was placed on paid administrative leave pending an investigation, and at no time was there anything having to do with children.*

21 | | | *Q. So you told the Meisters in the lobby of City Hall that you had been placed on administrative leave by your prior employer prior to coming to California City, but it did not involve minors?*

27 | | | *A. Correct.*

Plaintiff Dep.,

THE CITY'S RESPONSE TO PLAINTIFF'S
STATEMENTS OF FACTS

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

|  |  |  | 109:10-110:5. |
|---|---|---|---|
| 92. During Plaintiff's confrontation with the Meisters in the foyer of City Hall, Plaintiff discussed his administrative leave from his prior employer.<br><br>Plaintiff Dep., 109:6-110:5. | 92. Meister made an allegation that Plaintiff had been suspended from his previous employer for an allegation having to do with a child. Plaintiff told him that there was never an investigation related to any misconduct with children.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 109:10-16. | 93. OBJECTION: Non-Responsive.<br><br>Plaintiff's response does not dispute to the City's assertion.<br><br>DISPUTED.<br><br>The passages that Plaintiff and the City cite here include the following statement by Plaintiff:<br><br>*A. And they started off immediately with they heard some unsettling or some terrible things about me.*<br><br>*And I followed up with, "I'm not sure what you're talking about." They went into some – they alluded to me having been on – being suspended from – at my previous employment for some type of allegation having to do with children.*<br><br>*Q. Was that in reference, to your understanding, to your employment at Tulare County?*<br><br>*A. Yes.*<br><br>*Q. Say anything else?*<br><br>*A. The conversation proceeded that that was incorrect. And I confirmed at my previous employment* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| | | *I was placed on paid administrative leave pending an investigation, and at no time was there anything having to do with children.*<br><br>*Q.  So you told the Meisters in the lobby of City Hall that you had been placed on administrative leave by your prior employer prior to coming to California City, but it did not involve minors?*<br><br>*A.  Correct.*<br><br>Plaintiff Dep., 109:10-110:5. |
| 93.  During Plaintiff's confrontation with the Meisters in the foyer of City Hall, Plaintiff and the Meisters discussed parties that the Meisters were allegedly having at their house and to which Plaintiff was invited that the Meister's described as "swinger" parties.<br><br>Plaintiff Dep., 107:116:5. Linn Decl., ¶ 10. | 94.  UNDISPUTED. | 93.  UNDISPUTED. |
| 94.  On December 13, 2017, Plaintiff and Meisters had a public confrontation in the City Hall foyer during which Plaintiff discussed personal matters—particularly one that led to his administrative leave | 94.  Meister made an allegation that Plaintiff had been suspended from his previous employer for an allegation having to do with a child.  Plaintiff told him that there was never an investigation related to any | 94.  OBJECTION: Non-Responsive.<br><br>Plaintiff's response does not dispute the City's assertion.<br><br>DISPUTED.<br><br>The passages that Plaintiff and the City |

| | | |
|---|---|---|
| from the County of Tulare. | misconduct with children. | cite here include the following statement by Plaintiff: |
| Plaintiff Dep., 107:116:5. Linn Decl., ¶ 10. Linn Dep., 62:12-64:17. | Golds, Decl., ¶ 5, Plaintiff Depo., 109:10-16. | *A.  And they started off immediately with they heard some unsettling or some terrible things about me.* |
| | | *And I followed up with, "I'm not sure what you're talking about."  They went into some – they alluded to me having been on – being suspended from – at my previous employment for some type of allegation having to do with children.* |
| | | *Q.  Was that in reference, to your understanding, to your employment at Tulare County?* |
| | | *A.  Yes.* |
| | | *Q.  Say anything else?* |
| | | *A.  The conversation proceeded that that was incorrect.  And I confirmed at my previous employment I was placed on paid administrative leave pending an investigation, and at no time was there anything having to do with children.* |
| | | *Q.  So you told the Meisters in the lobby of City Hall that you had been placed on administrative leave by your prior* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | *employer prior to coming to California City, but it did not involve minors?*<br><br>*A. Correct.*<br><br>Plaintiff Dep., 109:10-110:5. |
|---|---|---|
| 95. Linn was a witness to part of the December 13, 2017 confrontation between Plaintiff and the Meisters.<br><br>Linn Decl., ¶¶ 10-11.<br>Linn Dep., 62:12-64:17. | 95. UNDISPUTED. | 95. UNDISPUTED. |
| 96. Linn described the portion of the December 13, 2017 confrontation that she witnessed between Plaintiff and the Meisters as loud.<br><br>Linn Decl., ¶ 10.<br>Linn Dep., 62:12-64:17. | 96. UNDISPUTED. | 96. UNDISPUTED. |
| **AFTER AN INITIAL DISCUSSION WITH PLAINTIFF, STOCKWELL ULTIMATELY TERMINATED PLAINTIFF AFTER AN ADDITIONAL INCIDENT** | | |
| 97. Stockwell was not satisfied with the December 15, 2017 meeting because he did not find Plaintiff's explanations to be credible or his apologies to be sincere.<br><br>Stockwell Decl., ¶ 21. | 97. UNDISPUTED. | 97. UNDISPUTED. |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| 98. After the December 15, 2017 meeting, and while Stockwell was trying to decide how to deal with the allegations against Plaintiff and Plaintiff's behavior, one additional incident occurred that led Stockwell to believe that Plaintiff's job at the City was no longer salvageable.<br><br>Stockwell Dep., 106:17-107:23. Stockwell Decl., ¶ 22.  Plaintiff Dep., 150:15-158:23. | 98. On or about December 17, 2017, Plaintiff and City police officers arrested a juvenile accused of arson at the middle school. Proper protocols were followed and the student was summoned to the front office of the school where he was calmly taken into custody.<br><br>Declaration of Eric Hurtado ("Hurtado Decl."), ¶¶ 2 – 4. | 98. OBJECTION: Non-Responsive.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds to the fact. |
| 99. Plaintiff went to City Hall after the juvenile was taken into custody.<br><br>Plaintiff Dep., 154:8-155:2. | 99. Plaintiff went to the police station and began to process the juveniles arrest paperwork with the Fire marshal. Plaintiff left briefly to get a happy meal to feed the juvenile while his paperwork was being completed. The plaintiff met with the juvenile's parents at City hall.  When the juvenile was finally transported to jail, the plaintiff stopped by city hall on the way back to the fire station to grab the department mail in the fire department outgoing mailbox at city hall. | 99. OBJECTION:  Lack of Foundation and Non-Responsive.<br><br>Plaintiff fails to provide any evidentiary support for this assertion. Further, Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds to the fact.<br><br>DISPUTED.<br><br>The passage that the City cites here includes the following statement by Plaintiff:<br><br>*Q.  Did you go back to City Hall after this incident on the same day?*<br><br>*A.  On the same day, yes?*<br><br>Plaintiff Dep., 154:8- |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | 155:2. |
|---|---|---|
| 100. Plaintiff recalls discussing the arrest of the juvenile with Linn and others in City Hall.<br><br>Plaintiff Dep., 155:11-156:6. | 100. Following the arrest, Plaintiff was at City hall and told Anna Linn that they had arrested the juvenile after pulling him out of class.<br><br>Golds Decl., ¶ 5, Plaintiff's Depo., 155:11-156:6. | 100. OBJECTION: Non-Responsive.<br><br>Plaintiff's response does not dispute the City's assertion that Plaintiff told Linn and merely omits that he told others at City Hall.<br><br>DISPUTED.<br><br>The passages that Plaintiff and the City cite here include the following statement by Plaintiff:<br><br>*Q. And did you tell anyone at City Hall about what had occurred with this juvenile and taking the juvenile into custody?*<br><br>*A. Yes.*<br><br>*Q. Do you recall who you told that to?*<br><br>*A. I want to say it was Anna as she was by the back door area. Everybody knew we had a fire the day before in the small community so people were asking, "Did you catch them?" Obviously seeing I'm wearing an arson vest. "Yeah, we caught them. We got one the day before and we got the second today at the school…"*<br><br>Plaintiff Dep., |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| | | 155:11-21. |
| 101. Linn reported to Stockwell that Plaintiff appeared at City Hall in what looked like assault equipment carrying a gun and bragged to City staff that he and other armed officers had gone to a junior high school that morning and had dragged two students out of their classrooms in handcuffs who were accused of arson.<br><br>Stockwell Dep., 107:17-113:15. Stockwell Decl., ¶ 23. Plaintiff Dep., 150:15-158:23. Linn Decl., ¶¶ 13-15. Linn Dep., 106:23-109:18. | 101. Linn thought that meant that Plaintiff physically dragged the juvenile from his classroom and reported this to Stockwell.<br><br>O'Connell Decl., ¶ 5, Linn Depo., 107:20-109:18. | 101. OBJECTION: Non-Responsive.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds to the fact.<br><br>DISPUTED.<br><br>The passages that Plaintiff and the City cite here include the following statement by Plaintiff:<br><br>*Q. And what was he [Vincent] doing?*<br><br>*A. Bragging about arresting a young boy at school and they got him and – yeah – it was pretty bad.*<br><br>*Q. Did he tell you that he pulled the juvenile out of class?*<br><br>*A. I heard that, yes, and I was upset about the story and went straight to Bob because if that happened –*<br><br>*Q. Did you interpret him saying that he pulled the kid out of class, like he was physically pulling him out?*<br><br>*A. I heard him – I heard, we went into the classroom. We got the kid and* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| | | *arrested him.*<br><br>*And he was excited about the fact that the got him at a middle school…*<br><br>Linn Dep., 107:17-108-5. |
| 102. When Stockwell heard that Plaintiff was bragging to City staff that he and other armed officers had dragged two students out of their classrooms in handcuffs, Stockwell called Police Chief Eric Hurtado ("Hurtado") to find out if this had occurred.<br><br>Stockwell Dep., 112:20-113:4. Stockwell Decl., ¶¶ 24-25. Declaration of Eric Hurtado ("Hurtado Decl."), ¶¶ 2-4. | 102. Stockwell then contacted Police Chief Hurtado who confirmed that the Plaintiff and the police officers had followed the appropriate protocols in making the arrest.<br><br>Hurtado Decl., ¶¶ 2-4. | 102. OBJECTION: Non-Responsive.<br><br>Plaintiff's response does not dispute the City's assertion. |
| 103. When Stockwell called Hurtado and spoke to him about Plaintiff's bragging, Hurtado stated that no such event had taken place but, instead, police officers had gone to the school and had a student summoned to the front office where he was calmly taken into custody.<br><br>Stockwell Dep., 112:20-113:4. Stockwell Decl., ¶¶ 24-25. Hurtado Decl., ¶¶ 2-4. | 103. Chief Hurtado confirmed that the Plaintiff and the police officers had followed the appropriate protocols in making the arrest.<br><br>Hurtado Decl., ¶¶ 2-4. | 103. OBJECTION: Non-Responsive.<br><br>Plaintiff's response does not dispute the City's assertion. |

THE CITY'S RESPONSE TO PLAINTIFF'S
STATEMENTS OF FACTS

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| 104. Stockwell alone made the decision to terminate Plaintiff based on a culmination of the aforementioned allegations and events.<br><br>Stockwell Dep., 106:17-108:1. Stockwell Decl., ¶ 26. | 104. Just days nine days before Plaintiff was terminated Stockwell met with the Meisters and they complained to Stockwell about Plaintiff's accusation that they were trying to bribe Plaintiff. They also complained about Plaintiff's enforcement of the fire code, including not approving cannabis permits for them and telling them they were not in compliance with the fire code. During the meeting, Stockwell agreed that the City would investigate their complaints and assigned Anna Linn to investigate. Shortly thereafter, Linn met with the Meisters and documented their complaints about Plaintiff and provided her notes to Stockwell and Ms. Johnson. Additionally on or about December 13, 2017, Mayor Wood met with Stockwell to complain about Plaintiff discussing her alleged affair. Mayor Wood was very upset, slamming her phone down and demanding that Stockwell do something to prevent Plaintiff from continuing to discuss her having an affair with Lieutenant Huizar. | 104. OBJECTION: Lack of Foundation and Hearsay.<br><br>Plaintiff's response is based upon conjecture, speculation, and inadmissible hearsay. Plaintiff has no cognizable evidence that rebut the assertion that Stockwell alone made the decision to terminate Plaintiff. |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| | O'Connell Decl., ¶ 5, Linn Depo., 51:11-57:21, 61:15-82:23. Golds Decl., ¶ 7, Wood Depo., 36:1-40:21. | |
| 105. Stockwell did not consult with Wood prior to terminating Plaintiff.<br><br>Stockwell Dep., 168:20-21. Stockwell Decl., ¶ 26. | 105.  On or about December 13, 2017, Mayor Wood met with Stockwell to complain about Plaintiff discussing the alleged affair. Mayor Wood was very upset, slamming her phone down and demanding that Stockwell do something to prevent Plaintiff from continuing to discuss her having an affair with Lieutenant Huizar.<br><br>Golds Decl., ¶ 5, Wood Depo., 36:1-40:21. | 105. DISPUTED.<br><br>The meeting described by Plaintiff in its response occurred on December 6, 2017. Wood told Stockwell that "I was upset that one of our City's directors would engage in such conduct and stated I believed Plaintiff should apologize for what he had done." At no point during that meeting did Wood ever state that Plaintiff should be terminated.<br><br>Between December 6, 2017 and December 18, 2017—when Stockwell terminated Plaintiff—Stockwell did not discuss Plaintiff's employment or whether he intended to terminate Plaintiff. Wood specifically testified, "Stockwell did not consult with me prior to terminating Plaintiff."<br><br>Wood Decl., ¶¶ 15-19. |
| 106. Wood only found out that the City had terminated Plaintiff after the City | 106.  UNDISPUTED. | 106. UNDISPUTED. |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| terminated him.<br><br>Stockwell Dep., 168:20-21. Declaration of Jennifer Wood ("Wood Decl."), ¶¶ 18-19. | | |
| 107. Stockwell did not consult with O'Laughlin prior to terminating Plaintiff.<br><br>Stockwell Dep., 168:20-21. Stockwell Decl., ¶ 26. | 107.  UNDISPUTED. | 107. UNDISPUTED. |
| 108. Stockwell did not consult with any city employees prior to terminating Plaintiff.<br><br>Stockwell Dep., 168:20-21. Stockwell Decl., ¶ 26.  Johnson Decl., ¶ 12.  Linn Decl., ¶ 17. | 108.  UNDISPUTED. | 108. UNDISPUTED. |
| 109. The reasons that Stockwell choose to terminate Plaintiff were as follows:<br><br>•   Plaintiff's conduct was unbecoming a director including, but not limited to, (i) appearing at City Hall more than appropriate and gossiping with other City staff members, including about Plaintiff's belief that Wood was having an affair and (ii) having an inappropriate confrontation with a | 109.  Plaintiff disputes each of these reasons as not being credible or as constituting pretext for unlawful discrimination.<br><br>Plaintiff's Decl. ¶ 9. Defendant's Ex. D. Plaintiff's Termination Letter | 109. OBJECTION: Lack of Foundation.<br><br>Plaintiff lacks the personal knowledge necessary to dispute the thoughts or opinions of Stockwell.<br><br>DISPUTED: To demonstrate pretext, it is not sufficient to deny the credibility of the employer's witnesses or speculate as to their discriminatory motive. *Martin v. Lockheed Missiles & Space Co.*, 29 Cal.App.1718, 1731 (1994).  Indeed, |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| citizen in the City Hall foyer;<br><br>• Plaintiff involved himself in police activity including, but not limited to, responding to police calls at night and bragging that he had dragged two students out of their classrooms; and<br><br>• Plaintiff's inability to understand the financial constraints of the City, including submitting a request for millions of dollars in funding and placing a ladder truck on the City Council agenda without permission after a parcel tax proposal failed that could cause the City to have to lay off significant amounts of staff members.<br><br>Stockwell Dep., 106:17-108:1. Stockwell Decl., ¶ 27. | | conjecture and speculation are not competent evidence. *Jackson v. Simon Property Group, Inc.*, 795 F.Supp.2d 949, 963 (N.D. Cal. 2011) (citations omitted). Rather, an employee must set forth specific facts demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence."'" *Hersant v. Department of Social Services*, 57 Cal.App.4th 997, 1005 (1997). Plaintiff fails to present any factual or competent evidence that meets this requirement. |
| 110. For unrelated reasons, O'Laughlin resigned from her position.<br><br>Stockwell Decl., ¶ 29. | 110. O'Laughlin resigned from her position and started working for cannabis industry.<br><br>Plaintiff Decl., ¶ 7. | 110. OBJECTION: Non-Responsive and Lack of Foundation.<br><br>Plaintiff's response both fails to address the substance of the City's assertion and inappropriately adds to the fact. Moreover, Plaintiff |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | |
|---|---|---|
| | | has not presented any cognizable evidence in support of this assertion. |
| 111. Plaintiff did not file an administrative appeal of his termination.<br><br>Stockwell Decl., ¶ 30.  Johnson Decl., ¶¶ 13-14. | 111. Plaintiff asserted that his rights were being violated when he was removed from his position without being provided with written notice, the reason or reasons for removal and an opportunity for administrative appeal. After Plaintiff indicated that this was unlawful, Defendant's Counsel, in an email dated December 28, 2017, advised Plaintiff's Counsel that Plaintiff had no appeal rights and the FBOR does not apply to Plaintiff because he was probationary.<br><br>Orchid Decl. ¶ 18, Ex. 17, Emails with City Attorney. | 111. DISPUTED.<br><br>The California City Municipal Code provides the procedure for an administrative appeal of disciplinary actions. Pursuant to that procedure, the appellant must "state in plain language the facts and reasons why the ruling is being appealed" and that such appeal must be filed "with the City Clerk within ten working days of receipt of the notice of disciplinary action from the City Manager." Plaintiff did not to file a written appeal with the City Clerk within ten days. Instead, ten days after receipt of the written notice of his termination, Plaintiff's counsel sent an email to the City's Human Resources Director that did not request an administrative appeal but demanded that "the termination be rescinded and Chief Vincent be immediately reinstated"<br><br>Within three hours of receiving Plaintiff's counsel's December 18 email, the City Attorney asked for clarification of the |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| | | basis for Plaintiff's counsel's demand for reinstatement. A day later, Plaintiff's counsel incorrectly stated that the City must reinstate Plaintiff because he should have been given an opportunity to respond to any charges against him before being removed from his position. Again, the City Attorney asked for clarification, this time asking for the authority upon which she was premising her demand. Plaintiff's counsel failed to respond to that email and, instead, filed a Government Claim on January 30, 2018.<br><br>Statement of UNDISPUTED Facts, ¶¶ 55, 60, and 71. Orchid Delc., Exh. 17. |
|---|---|---|
| 112. Ultimately, Stockwell decided that he could not rehire Plaintiff because he was not satisfied that Plaintiff could address the issues that caused Stockwell to terminate Plaintiff.<br><br>Stockwell Decl., ¶ 33. | 112. The Plaintiff was never informed of the reasons for termination. Plaintiff received only a short letter terminating him on or about December 18, 2018. The letter stated none of the reasons now being presented by the Defendant as reasons for the termination.<br><br>Orchid Decl. ¶ 18, Ex. 17, Emails with City Attorney. | 112. OBJECTION: Lack of Foundation and Non-Responsive.<br><br>Plaintiff lacks the personal knowledge necessary to dispute the thoughts or opinions of Stockwell. Moreover, Plaintiff's response does not dispute the City's fact. |

## PLAINTIFF'S STATEMENT OF DISPUTED FACTS

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| 113. On or about June 2016, the City began with plans to bring medical cannabis business into town. This plan was pushed forward by Mayor Jennifer Wood ("Mayor Wood") and Josh Meister.<br><br>Declaration of Oshea Orchid ("Orchid Decl."), ¶ 3, Ex. 1, Confidential Investigation Report, Cal City bates no. 00323. | 113. OBJECTION: Lack of Foundation and Hearsay.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Confidential Investigation Report prepared by Steven Chiari. Moreover, the report itself and the allegations on which Plaintiff attempts to rely are unattested for hearsay and hearsay within hearsay, each of which is inadmissible.<br><br>RESPONSE.<br><br>The portion of this document that Plaintiff may be attempting to rely on for this assertion is as follows:<br><br>*Ms. Hurtado does not support Mayor Wood's endorsement of the marijuana industry. Ms. Hurtado stated, "I don't agree with it. Yes, the City needs the revenue, but I'm a copy's wife. I don't want marijuana here. I've seen what drugs can do to people. So it's not just marijuana specifically. But it's everything, but they [Mayor Wood, former Fire Chief Jeff Armstrong, and Josh Meister] were the three that started pushing the City towards it.*<br><br>This paragraph does not state that (i) "on or about June 2016, the City began with plans to bring medical cannabis business into town" or that (ii) "[t]his plan was pushed forward by Mayor Jennifer Wood and Josh Meister."<br><br>Orchid Decl., Exh. 1, CalCity00323. |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| 114. Following Mayor Woods being elected, Mayor Wood appointed her campaign manager Carlos Gomez to the City Council so that Gomez was the only council member who was not elected to the City Council.<br><br>Orchid Decl., ¶ 4, Ex. 2, City of California City Special Meeting City Council Agendas, 9/13/16 and 9/27/16 | 114. OBJECTION: Lack of Foundation, Hearsay, and Relevance.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a City of California City Council Agenda from September 13, 2016. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment.<br><br>DISPUTED .<br><br>The portion of this document that Plaintiff may be attempting to rely on for this assertion is as follows:<br><br>*Council discuss, allow applicants 3 minutes to speak, take public questions and appoint an individual to fill the remaining two+ years of the term.*<br><br>This portion of the City Council Agenda does not state (i) when Mayor Wood was elected, (ii) that Mayor Wood—as opposed to the entire council—appointed a council member, (iii) "Mayor Wood appointed her campaign council manager," (iv) or that this council member "was the only council member who was not elected."<br><br>Orchid Decl., Exh. 2, p. 3. |
| 115. When Mayor Wood was advocating to bring medical cannabis into the City, City Officials, including City Council Member Carlos Gomez, started cannabis businesses and sought permits from the City to set up cannabis growing and | 115. OBJECTION:  Lack of Foundation and Hearsay.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Grand Jury Report. |

LAW OFFICES OF
BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| manufacturing facilities within City limits. | DISPUTED. |
| Orchid Decl., ¶ 5, Ex. 3, Grand Jury Recomm. Tale of a City, pg. 77 | The portion of this document that Plaintiff may be attempting to rely on for this assertion is as follows: |
| | *On June 12, 2017, the Code Enforcement Officer started a case for Open Violations: graded lot, unlawful temporary property use, activity, or business on a vacant lot. This lot is ten acres, owned by a City Council Member with a Cannabis permit for this property.* |
| | This paragraph does not state that (i) "Mayor Wood was advocating to bring medical cannabis into the City," or (ii) City Officials, including City Council Member Carlos Gomez, started cannabis businesses and sought permits from the City to set up cannabis growing and manufacturing facilities within City limits." |
| | Orchid Decl., Exh. 3, p. 77. |
| 116. As the new Fire Chief, Plaintiff was immediately tasked with working with cannabis businesses seeking permits to build growing and manufacturing facilities in the City. City officials pressured Plaintiff to be 'business friendly' to cannabis businesses and to allow them to obtain permits, sometimes, without meeting Fire Code requirements. Plaintiff spoke with City Manager Tom Weil ("Weil") during Plaintiff's first few months of employment and discussed his concerns with the impact of building hundreds of new commercial structures in the City. The Fire Department didn't have the staffing, stations, equipment, and training to provide adequate safety related | 116. OBJECTION: Inadmissible Expert Opinion. |
| | Federal Rule of Civil Procedure Rule 26(a)(2) provides that a party must disclose to the other parties the identify of any witness it may use at trial to present expert opinions. Plaintiff has failed to identify Justin Vincent as an expert as required by Rule 26(a)(2). As a result, the following is inadmissible: |
| | *City officials pressured Plaintiff to be 'business friendly' to cannabis businesses and to allow them to obtain permits, sometimes, without meeting the Fire Code requirements.* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| services to the number of conditional permits which were being given out.  City Manager Weil told Plaintiff to provide detailed information on his concerns and report back to him with what the City would need to do to safely add the hundreds of additional structures for the new cannabis facilities.  Plaintiff began researching NFPA 1710 staffing requirements and working with other jurisdictions that had a large amount of cannabis businesses to prepare a report for Mr. Weil.<br><br>Declaration of Howard B. Golds ("Golds Decl."), ¶ 5, Plaintiff Justin Vincent's Deposition ("Plaintiff Depo."), 68:1 - 69:23 | *The Fire Department didn't have the staffing, stations, equipment, and training to provide adequate safety related to services to the number of conditional permits which were being given out.*<br><br>DISPUTED.<br><br>The testimony Plaintiff cites at pages 68 and 69 of his deposition testimony relate to his allegation that he orally reported to Director of Human Resources Mary Johnson ("Johnson") that Joshua Meister ("Meister") offered to take Vincent to Las Vegas or to Lake Havasu.  These pages of testimony do not include any of the assertions Plaintiff offers here.<br><br>Deposition of Plaintiff Justin Vincent ("Plaintiff Dep."), 68:1-69:23. |
| 117.  Plaintiff encountered business owners expecting preferential treatment including Eddie Borna and Josh Meister.  In or around June 2017, Mr. Meister offered Plaintiff all expenses paid trips to Vegas and Lake Havasu in exchange for Plaintiff approving his permits.  Plaintiff understood to be an attempt to bribe him so he declined to accept any bribes or give any preferential treatment to Mr. Meister.  Plaintiff reported to Human Resources and the City Manager that he was being offered bribes.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 63:2 – 68:24 | 117.  DISPUTED.<br><br>In the pages Plaintiff relies on for the assertions Plaintiff offers here, Plaintiff recounts receiving an "offer" to go to Las Vegas or to Lake Havasu with Meister.  Therein, Plaintiff did not testify (i) about Eddie Borna ("Borna"), (ii) that he was asked to give Meister or Borna preferential treatment, and (iii) does not state that Meister or Borna asked him to approve their permits.  Moreover, Plaintiff describes Meister's offer as follows:<br><br>*Q.  And did you tell Chief Hurtado this was a bribe or attempted bribe?*<br><br>*A.  I told him it was an offer.  I did not – I don't believe I used the term "bribe" at that point.  I just told him that he at one point* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| | *offered me a trip.* |
| | Plaintiff Dep., 65:14-18. Plaintiff Dep., 63:2-68:24. |
| 118. In or around June 2017, City Manager Weil wrote letters to FEMA and California State Fire Training indicating Plaintiff was very well qualified for his position and should be certified as a chief officer, and trainer, and be allowed to participate in an executive fire officer program. In addition to his role of Fire Chief Plaintiff was also the City's Lead Arson Investigator, Hazmat Incident Commander and Fire Code Official. Plaintiff's duties included law enforcement and he was called out by the police department on various occasions. | 118. OBJECTION: Lack of Foundation and Hearsay. |
| | Plaintiff has not properly sought to introduce the document on which this fact relies, Letters from Tom Weil. |
| | DISPUTED. |
| | The City does not dispute that then-City Manager Tom Weil ("Weil") submitted a letter to the California State Fire Training and to the U.S. Fire Administration attesting to Plaintiff's qualifications at the time. Plaintiff does not cite to any evidence that demonstrates that he was the City's Lead Arson Investigator, HAZMAT Incident Commander, and Fire Code Official. The City does not dispute these contentions. |
| Golds Decl., ¶ 5, Plaintiff Depo. 160:3-14. Orchid Decl., ¶ 6, Ex. 4, Letters from Tom Weil | |
| | The City disputes that "Plaintiff's duties included law enforcement and he was called out by the police department on various occasions." Plaintiff cites to a single occasion where the police department requested his assistance with a potential HAZMAT issue. To the contrary, Plaintiff voluntarily involved himself in police activity that were beyond his very limited role as an Arson Investigator including, but not limited to, responding to police calls late at night and bragging that he arrested and dragged two students out of their classrooms. |
| | Plaintiff Dep., 160:3-14. Declaration of Robert Stockwell, |

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| | ¶ 27(b). |
| 119. On June 12, 2017, the Fire Department started a code enforcement case for violations by City Council member, Carlos Gomez, on a ten acre lot which he had permits to build a cannabis facility.  After review of the violations by the Plaintiff this case was referred to the California Department of Fish and Wildlife.<br><br>Orchid Decl., ¶ 5, Ex. 3, Grand Jury Recomm. Tale of a City, pg. 77 | 119. OBJECTION:  Lack of Foundation, Hearsay, and Relevance.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Grand Jury Recommendation. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment.<br><br>DISPUTED.<br><br>The portion of this document that Plaintiff may be attempting to rely on for this assertion is as follows:<br><br>*On June 12, 2017, the Code Enforcement Officer started a case for Open Violations: graded lot, unlawful temporary property use, activity, or business on a vacant lot.  This lot is ten acres, owned by a City Council Member with a Cannabis permit for this property.  The last case entry was made on June 28, 2017, "Waiting on response from Chief" (Fire).  The Committee was informed that this case was given to the California Department of Fish and Wildlife for further investigation, for environmental concerns.*<br><br>This portion of the City Council Agenda does not state (i) the case was against City Council Member Carlos Gomez  or (ii) those violations were sustained.<br><br>Orchid Decl., Exh. 3, p. 77. |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| 120. On or about July 25, 2017, Plaintiff presented the City Council with a report outlining the fire and safety dangers associated with the cannabis industry.<br><br>Defendant's Ex. F, MMJ Impact Report | 120. OBJECTION: Inadmissible Expert Opinion.<br><br>Federal Rule of Civil Procedure Rule 26(a)(2) provides that a party must disclose to the other parties the identify of any witness it may use at trial to present expert opinions. Plaintiff has failed to identify Justin Vincent as an expert as required by Rule 26(a)(2). As a result, Plaintiff cannot testify as to his opinion of the alleged "fire and safety dangers associated with the cannabis industry." |
| 121. The Marijuana Impact Report included recommendations for training, personnel, and resources needed to safely serve the community during expansion of the cannabis industry.<br><br>Defendant's Ex. F, MMJ Impact Report | 121. UNDISPUTED. |
| 122. The report was not well received.<br><br>Orchid Decl., ¶ 7, Ex. 5, Grand Jury Recomm. High Hopes for the Cannabis Industry, pg. 53 | 122. OBJECTION: Lack of Foundation, Vague, and Ambiguous.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Grand Jury Recommendation. Moreover, Plaintiff's assertion that his Marijuana Impact Report was "not well received" is vague and ambiguous.<br><br>DISPUTED IN PART.<br><br>The Parties have already stipulated to the following fact:<br><br>*At the July 25, 2017 meeting, City Council members expressed their concern that agreeing to the Plaintiff's requests would be too costly and at least one* |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| | *department manager expressed concern to Plaintiff that he was going to "kill the town."* |
| | Stipulated Statement of Uncontroverted Facts, p. 4, ¶ 10. |
| 123. City Council Members, including Mayor Jennifer Wood, expressed concern that following Plaintiff's recommendations for safety measures would be too costly. The Kern County Grand Jury later made findings consistent with Plaintiff's report that the City's Fire Department was undermanned, the fire engines were at times completely inoperable, and that the cannabis industry posed numerous health and safety concerns.<br><br>Orchid Decl., ¶ 8, Ex. 6, Grand Jury Recomm. Code Red, pgs. 37-38 | 123. OBJECTION: Lack of Foundation, Hearsay, and Inadmissible Expert Opinion.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Grand Jury Recommendation.<br><br>In addition, pursuant to Federal Rule of Evidence 803(8)(C), Grand Jury Reports that contain conclusions and opinions may be admissible "[a]s long as the conclusion is [1] based on a factual investigation and [2] satisfies the Rule's trustworthiness requirement." *McConnell v. Lassen County*, 2007 WL 1931603, at *19-20 (E.D. Cal. 2007)(citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988)). The Grand Jury Report at issue relied on "City Council meeting agendas" for its preparation. While the Grand Jury Report does not state what agendas it relied on, the similarity in the conclusions and language used by the Grand Jury Report to Plaintiff's "Marijuana Impact Report" indicates that the Grand Jury relied on Plaintiff's "Marijuana Impact Report."<br><br>As stated above, the opinions that Plaintiff offers in his "Marijuana Impact Report" are inadmissible because Plaintiff has failed to comply with the requirements of Federal Rule of Civil Procedure Rule 26 in order to offer expert opinions. Based thereon, it |

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| | would be improper to allow Plaintiff to subvert Rule 26 and offer those same opinions through a different document—particularly when that document likely relied on his own report. Moreover, because the Grand Jury Report likely relied on Plaintiff's "Marijuana Impact Report," the trustworthiness of the report and its conclusions is also questionable. (See Plaintiff's Disputed Fact, ¶ 157). |
| 124.  During this time Mayor Wood had a close friendship with Assistant City Manager and Finance Director Jeannie O'Laughlin and both were known to be supporters of the cannabis industry.  Plaintiff reported to the City Manager in July 2017 that he was concerned O'Laughlin had a conflict of interest in that her son was looking for a local position in the marijuana industry.<br><br>Declaration of Thomas M. O'Connell ("O'Connell Decl."), ¶ 5, Deposition of Anna Linn ("Linn Depo."), 130:13-21. Golds Decl., ¶ 5, Plaintiff Depo., 38:19 - 42:7.  Golds Decl., ¶ 7, Deposition of Mayor Jennifer Wood ("Wood Depo."), 34:7-25. Declaration of Plaintiff Justin Vincent ("Plaintiff Decl."), ¶ 6. | 124.  OBJECTION: Hearsay.<br><br>The statement that "both were known to be supporters of the cannabis industry" is unattributed hearsay.<br><br>DISPUTED.<br><br>Contrary to Plaintiff's assertion, Former-Mayor Wood testified that her relationship with former-Finance Director Jeannie O'Laughlin was limited to their roles with the City and that they communicated only as often as needed for Council business.<br><br>Wood Dep., 34:7-16. |
| 125.  Mayor Wood and Ms. O'Laughlin became very hostile towards Plaintiff after his presentation of the Marijuana Impact Report. Mayor Wood was very aggressive towards Plaintiff during Council Meetings to the point that members of the public would complain about Mayor Wood's treatment of Plaintiff.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., | 125.  OBJECTION: Hearsay.<br><br>The statement that "[t]he public would complaint about Mayor Wood's treatment of Plaintiff" is unattributed hearsay.<br><br>DISPUTED IN PART.<br><br>The Parties have already stipulated that Wood and O'Laughlin only became |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| **Plaintiff's Disputed Fact & Supporting Evidence** | **The City's Response & Supporting Evidence** |
|---|---|
| 132:23 – 133:19.  Orchid Decl., ¶ 9, Ex. 7, Plaintiff's Email to Mary Johnson, Cal City bates no. 00702 | "aggressive" towards Plaintiff after he presented his "Marijuana Impact Report" and that he cannot recall whether they were aggressive towards him related to the City's finances.<br><br>Stipulated Statement of Uncontroverted Facts, pp. 4-8, ¶¶ 12-31. |
| 126.  Mayor Wood and Ms. O'Laughlin told Plaintiff that he needed to ease up on enforcing the Fire Code requirements because the City's priority was to do whatever it takes to get revenues from the cannabis businesses.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 58:3 – 61:14 | 126.  DISPUTED<br><br>Plaintiff did not depose O'Laughlin.  During Plaintiff's deposition of Wood, she testified that she did not discuss the Fire Code requirements with Plaintiff or anyone else other than when it is part of the regular agenda at a public meeting.  Wood specifically testified as follows:<br><br>*Q.  Okay.  Did you ever have any conversations with Justin Vincent while he was employed by the City about the marijuana businesses?*<br><br>*A.  No, ma'am, other than what we discussed during the regular Council meeting.*<br><br>Wood Dep., 18:2-14; 46:8-48:4. |
| 127.  Ms. O'Laughlin repeatedly threatened Plaintiff telling him he would not pass probation if he didn't ease up on enforcement.  Plaintiff refused to ease up on enforcement and reported these threats to Human Resources and the City Manager.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 60:5-23 | 127.  DISPUTED.<br><br>Plaintiff did not depose O'Laughlin.  When Plaintiff refers to the "City Manager," the City assumes Plaintiff is referring to former-City Manager Tom Weil, whom Plaintiff also did not depose.  When Plaintiff refers to "Human Resources," the City assumes Plaintiff is referring to Director of Human Resources Mary Johnson.  Johnson testified as follows regarding Plaintiff's |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| | reports regarding O'Lauhglin: |
| | *Q. You mentioned that before the complaint that caused you to give Jeanie O'Laughlin a disciplinary notice, there were other complaints about working with Jeannie?* |
| | *A. Yes.* |
| | *Q. And that Justin had also complained?* |
| | *A. Yes.* |
| | *Q. Did he ever mentioned to you that he felt like she was threatening him?* |
| | *A. No.* |
| | *Q. Did he ever mention to you that she had told him that he was on probation?* |
| | *A. No.* |
| | Johnson Dep., 31:25-32:12. |
| 128. On August 28, 2017, Plaintiff emailed Human Resources Manager Mary Johnson to report that O'Laughlin had treated him with disgust and disrespect indicating that he believed the treatment may be due to the color of his skin.<br><br>Orchid Decl., ¶ 10, Ex. 8, Email to Mary Johnson Cal City bates no. 00701. | 128. DISPUTED IN PART.<br><br>In relevant part, Plaintiff questioned whether the treatment may be due to the color of his skin, his age, or O'Laughlin just hates the fire department.<br><br>Orchid Decl., Exh. 8, CalCity00701. |
| 129. In or around August 2017, Plaintiff had his staff red tag a building previously used as a gym that was being illegally inhabited and used for the storage of hemp.<br><br>Orchid Decl., ¶ 3, Ex. 1, | 129. OBJECTION: Lack of Foundation and Relevance.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Confidential Investigation |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| Confidential Investigation Report Cal City bates no. 00312-00313, 00335 | Report. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 130. On or about September 8, 2017, the owner of the property Eddie Borna, a close friend of Mayor Wood, complained to the City about his building being red tagged. Mr. Borna told City staff that he had met with Mayor Wood and another City Council member until 1:30am and that "something big is going to happen at the Fire Department." Borna referenced his relationship with the City Council in his communications with City staff to pressure staff to allow him to occupy the building in violation of the fire code.<br><br>Orchid Decl., ¶ 3, Ex. 1, Confidential Investigation Report Cal City bates no. 00312-00313, 00336 | 130. OBJECTION: Lack of Foundation, Hearsay, and Relevance.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Confidential Investigation Report prepared by Steven Chiari. Moreover, the report itself and the allegations on which Plaintiff attempts to rely are unattested for hearsay and hearsay within hearsay, each of which is inadmissible. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 131. Following this, the red tag was removed from the building, and City Officials directed the Fire Marshal and Code Enforcement officers not to return to the building.<br><br>Orchid Decl., ¶ 5, Ex. 3, Grand Jury Recomm. Tale of a City, pg. 76 | 131. OBJECTION: Lack of Foundation, Hearsay, and Relevance.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Grand Jury Recommendation. Moreover, the assertion itself is unattested for hearsay and hearsay within hearsay, each of which is inadmissible. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 132. Numerous complaints about this went to the Kern County Grand Jury ("Grand Jury") which later concluded that City officials were interfering with code enforcement | 132. OBJECTION: Lack of Foundation, Hearsay, and Relevance.<br><br>Plaintiff has not properly sought |

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| in the City by directing code enforcement officers not to inspect certain properties based on who owned them. The Grand Jury recommended that City officials allow code enforcement officers to perform their assigned duties, regardless of property ownership and enforce all cannabis ordinances equally.<br><br>Orchid Decl., ¶ 5, Ex. 3, Grand Jury Recomm. Tale of a City, pgs. 73, 77, 81 | to introduce the document on which this fact relies, a Grand Jury Recommendation. Moreover, the assertion itself is unattested for hearsay and hearsay within hearsay, each of which is inadmissible. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 133. On September 11, 2017, Plaintiff attended a memorial event held at the California City High School featuring public officials, and Fire Department and law enforcement personnel. During the event, Mayor Wood walked down the line of City officials shaking the hands of all the officials in line before and after Plaintiff, but she walked around the Plaintiff and hugged Lieutenant Huizar. Prior to the event Plaintiff, the City's Human Resources Manager Mary Johnson, the Assistant to the Human Resources Manager Anna Linn had all heard rumors from members of the public and City staff that Mayor Wood was having an affair with Lieutenant Huizar.<br><br>Orchid Decl., ¶ 9, Ex. 7, Plaintiff's Email to Mary Johnson, Cal City bates no. 00702. Orchid Decl., ¶ 11, Ex. 9, Fire Crew Statements, Cal City bates nos. 00697, 00699-00700. Golds Decl., ¶ 5, Plaintiff Depo., 86:4-10. O'Connell Decl., ¶ 3, Deposition of Mary Johnson ("Johnson Depo."), 74:4 -76:9. O'Connell Decl., ¶ 5, Linn Depo., 32:5 – 34:8, 46:17 – 47:18 | 133. UNDISPUTED.<br><br>For the purposes of this Motion for Summary Judgment, this assertion is undisputed. |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| 134. Employees reported to Human Resources and City investigators that Mayor Wood and Lieutenant Huizar frequently had private meetings and phone calls, were seen hugging, he was bringing her flowers, and he had sent her pictures of himself without a shirt on.<br><br>O'Connell Decl., ¶ 3, Johnson Depo., 74:4 – 76:9. Golds Decl., ¶ 5, Plaintiff Depo., 82:20 – 84:9.Orchid Decl., ¶ 3, Ex. 1, Confidential Investigation Report Cal City bates no. 00323, 00330-00331, 00357. | 134. OBJECTION: Lack of Foundation, Hearsay, and Relevance.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Confidential Investigation Report. Moreover, the assertion itself is unattested for hearsay and hearsay within hearsay, each of which is inadmissible. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 135. The community had concerns Lieutenant Huizar had engaged in criminal activities, and had previously been employed by the Maywood Police Department which was disbanded due to corruption, sexual misconduct and excessive force. Council member Parris believed that Lieutenant Huizar was associated with the Mexican Mafia and that Lieutenant Huizar was trafficking girls and drugs across the Mexican border. Council member Parris funded a private investigation into Lieutenant Huizar and reported that he found "very damaging" emails between Mayor Wood and Lieutenant Huizar.<br><br>Orchid Decl., ¶ 3, Ex. 1, Confidential Investigation Report Cal City bates no. 00325<br><br>Orchid Decl., ¶ 12, Ex. 10, Why Some Problem Cops Don't Lose Their Badges, Wall Street Journal, pgs. 6 - 7 | 135. OBJECTION: Lack of Foundation, Hearsay, and Relevance.<br><br>Plaintiff has not properly sought to introduce the documents on which this fact relies, a Confidential Investigation Report and a Wall Street Journal Article. Moreover, the assertion itself is unattested for hearsay and hearsay within hearsay, each of which is inadmissible. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 136. Many members of the public had voted against the parcel tax | 136. OBJECTION: Lack of Foundation, Hearsay, and |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| **Plaintiff's Disputed Fact & Supporting Evidence** | **The City's Response & Supporting Evidence** |
|---|---|
| because they did not trust Mayor Wood and other City Officials while Chief Hurtado was on administrative leave and Lieutenant Huizar was running the Police Department.<br><br>Orchid Decl., ¶ 13, Ex. 11, Facebook Discussion 3/3/2018 | Relevance.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Facebook Discussion. Moreover, the assertion itself is unattested for hearsay and hearsay within hearsay, each of which is inadmissible. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 137. Plaintiff reported to Human Resources Manager Mary Johnson that the Mayor had refused to shake his hand during the 9-11 ceremony and walked around him to hug Huizar in front of everyone. He told Ms. Johnson he was being singled out because of his race. He took written reports from his firemen and gave them to Ms. Johnson.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 92 :15 – 94:10. Orchid Decl., ¶ 9, Ex. 7, Plaintiff's Email to Mary Johnson, Cal City bates no. 00702. Orchid Decl., ¶ 11, Ex. 9, Fire Crew Statements, Cal City bates no. 00697, 00699-00700. | 137. DISPUTED.<br><br>The Plaintiff relies on for this fact does not state "he was being singled out because of his race." Instead, Plaintiff calls then-Mayor Wood "classless" and "rude."<br><br>Orchid Decl., Exh. 9, CalCity00702. |
| 138. Ms. Johnson took further no action to investigate or document what had occurred and instead told Mayor Wood that Plaintiff had complained about her.<br><br>O'Connell Decl., ¶ 3, Johnson Depo., 57:3 – 60:17 | 138. DISPUTED.<br><br>The passage that Plaintiff cites for this fact states that after Johnson received these complaints from Vincent, she spoke to the City Manager and then asked Mayor Wood for her response to this complaint. Johnson testified that informed her that "she [Wood] shook his [Vincent] hand earlier and they talked earlier at the gathering. So when she went through the line, she didn't feel it was necessary to shake his hand |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| | again. |
| | This chronology of events has been stipulated by the Parties. |
| | Johnson Dep., 57:3-60:17. Stipulated Statement of Uncontroverted Facts, ¶ 28. |
| 139. On October 3, 2017, during a Director's meeting staff including City Manager Weil witnessed O'Laughlin being mean spirted and unprofessional towards Vincent, grabbing a report out of his hands and then flinging it at him berating him, as if he was a child, over a request to send his firemen to paramedic school.<br><br>Orchid Decl., ¶ 14, Ex. 12, Weil Memo, Cal City bates no. 00685 - 00686 | 139. UNDISPUTED.<br><br>For purposes of this Motion for Summary Judgment, this fact is undisputed. |
| 140. On October 6, 2017, Plaintiff sent a formal complaint of a hostile work environment to Mary Johnson in Human Resources which had the City's harassment policy attached. Plaintiff highlighted the part of the policy which indicated race and color were protected traits indicating that he believed O'Laughlin's disdain for him may be related to his race.<br><br>Orchid Decl., ¶ 15, Ex. 13, Plaintiff's Complaint, Cal City bates no. 00687 – 00689 | 140. DISPUTED IN PART.<br><br>The complaint that Plaintiff submitted on October 6, 2017, was limited to allegations that O'Laughlin was essentially rude or "nasty" to Plaintiff. Plaintiff's complaint made no reference to race.<br><br>Plaintiff attached a document with four words colored red, "Hostile work environment," "Race," "Color," and "Age."<br><br>Orchid Decl., Exh. 13. |
| 141. On October 5, 2017, Fire Department employees deactivated Code Enforcement Officer Ron Robbins' access to their Transunion background search program TLO after they learned that he had conducting searches unrelated to City business, specifically on citizens | 141. OBJECTION: Hearsay and Relevance.<br><br>The assertion itself contains unattested for hearsay and hearsay within hearsay, each of which is inadmissible. In addition, this fact is not relevant to the present lawsuit or the |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| who were critical of the Mayor. Fire Department staff were concerned that Ron Robbins had being conducting searches at the Mayor's request. During the next Council Meeting Mayor Wood asked about the TLO account and said she didn't want to pay for TLO. Plaintiff and Fire Marshal Jeremy Kosick investigated Robbins use of TLO and recommended that he be terminated.  Fire Marshal Kosick also contacted the District Attorney's office to refer the case for criminal prosecution. Plaintiff, Kosick, and Human Resources Manager Johnson did a conference call with the City Attorney in which it was decided that Robbins would be terminated on November 20, 2017.  On November 20, 2017, Johnson called Kosick.  Ms. Johnson had O'Laughlin with her during the call and O'Laughlin insisted that Ron Robbins should not be terminated calling their investigation into him a "witch hunt." On November 22, 2017, Lieutenant Huizar sent Plaintiff an email commending Robbins on his performance. After further discussion with the City Attorney's office Plaintiff spoke with City Manager Weil and he agreed to follow Plaintiff's recommendation and terminate Robbins.

Orchid Decl., ¶ 16, Ex. 14, Jeremy Kosick Memo, Cal City bates no. 00586 – 00591. Golds Decl., ¶ 5, Plaintiff Depo., 95:1-9. | instant Motion for Summary Judgment. |
| 142. Employees and private citizens were concerned that Mayor Wood would retaliate against Plaintiff for terminating Robbins.

Orchid Decl., ¶ 3, Ex. 1, | 142.  OBJECTION: Lack of Foundation, Hearsay, and Relevance.

Plaintiff has not properly sought to introduce the documents on |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| **Plaintiff's Disputed Fact & Supporting Evidence** | **The City's Response & Supporting Evidence** |
|---|---|
| Confidential Investigation Report, Cal City bates no. 00314, 00374<br><br>Orchid Decl., ¶ 17, Ex. 15, Facebook Discussion, Cal City bates no. 00561 – 00562, 00564 | which this fact relies, a Confidential Investigation Report and a Facebook Discussion. Moreover, the assertion itself is unattested for hearsay and hearsay within hearsay, each of which is inadmissible.  In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 143.  It was well established that other than Mayor Wood and Assistant City Manager O'Laughlin, Plaintiff's performance was commended by the community, his subordinates and other coworkers.<br><br>O'Connell Decl., ¶ 5, Linn Depo., 25:21-23, 160:4-9. Orchid Decl., ¶ 17, Ex. 15, Facebook Discussion, Cal City bates no. 00556. Plaintiff Decl., ¶ 10, Ex. 20, California City Fire Association Support Letter | 143.  OBJECTION: Lack of Foundation, Hearsay, and Relevance.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Facebook Discussion. This assertion includes unattested for hearsay and hearsay within hearsay.  In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment.<br><br>DISPUTED IN PART<br><br>The opinions of the community, Plaintiff's subordinates, and other coworkers is neither at issue in this matter or quantifiable in a meaningful way. |
| 144.  On November 21, 2017, Plaintiff received a performance evaluation.<br><br>Plaintiff Decl., ¶ 7, Ex. 16, Performance Evaluation | 144.  UNDISPUTED. |
| 145.  This review from City Manager Weil, marked Plaintiff as "exceeds expectations" in every category. Weil noted, "Chief Justin is definitely a hands on individual who doesn't hesitate to lead by example!"  The evaluation also emphasized he | 145.  UNDISPUTED. |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| should be cooperative in working with the cannabis industry referring to this as "new industry development." | |
| Plaintiff Decl., ¶ 7, Ex. 16, Performance Evaluation | |
| 146. On November 28, 2017, City Manager Weil retired and the position was filled by Robert Stockwell.  From the time, he was appointed, City Manager Stockwell worked closely with Mayor Wood and the cannabis business owners.  Stockwell rented his home from Josh Meister. | 146. OBJECTION: Vague and Ambiguous. |
| | It is unclear what the phrase "worked closely with … the cannabis business owners" means in this assertion. |
| Golds Decl., ¶ 3, Stockwell Depo., 86-87 | DISPUTED IN PART. |
| | The portion of the deposition testimony that Plaintiff cites to does not include any testimony that Stockwell worked closely with cannabis business owners. |
| | Stockwell Dep., 86:1-87:25. |
| 147. Stockwell frequently met privately with cannabis business owners including Josh Meister and Carlos Gomez, in some cases asking other staff to leave these meetings.   Josh Meister, Carlos Gomez had multiple applications for businesses in the City. | 147. OBJECTION: Vague and Ambiguous. |
| | It is unclear what the term "frequently" or "in some cases" means in this assertion. |
| O'Connell Decl., ¶ 5, Linn Depo. 149:2 – 150:8. Golds Decl., ¶ 5, Plaintiff Depo., 100 – 101. | DISPUTED. |
| | The portion of Linn's deposition testimony cited by Plaintiff states that Linn was asked to leave one or two meetings between Mike Ellison, Jerry Heller, Carlos Gomez, and Stockwell.  No mention is made of the number of meetings that occurred generally or of Meister. |
| | Stockwell Dep., 149:2-150:8. |
| 148. Stockwell told the City's managers, including Plaintiff, that the City's primary objective was | 148. DISPUTED. |
| | Plaintiff failed to ask this |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| to get cannabis businesses up and running, and that should be done at all costs.<br><br>Golds Decl., ¶ 5, Plaintiff Depo. 97:1 - 13 | question to Stockwell. However, during Stockwell's deposition, he testified that he stated that he discussed with department heads that the city was pursuing the marijuana business and that it was important to the City's financial future.<br><br>Stockwell Dep., 58:1-17. |
| 149. On or about December 6, 2017, Plaintiff had a conversation with Josh Meister and his brother Jason Meister in the City Hall waiting area. The Meisters were at City Hall to meet with Stockwell and were discussing their plans to get Stockwell to allow recreational marijuana when Plaintiff walked up. Plaintiff greeted them and shook their hands. The Meisters asked him about his being suspended by a previous employer and if there were allegations having to do with children. Plaintiff told them that was not true. The Meisters commented that Plaintiff didn't attend parties at their home even though they lived in the same neighborhood and Plaintiff told them that he could not participate because he understood the parties got wild. Josh Meister took this to mean that Plaintiff was accusing them of being swingers and indicated he was offended.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 108:9 – 111:7 | 149. DISPUTED IN PART.<br><br>The City has submitted several facts related to this incident that contradict the assertion provided here. In sum, the facts offered by the City demonstrate that Vincent instigated a loud and inappropriate confrontation in the foyer of City Hall.<br><br>Stipulated Statement of Undisputed Facts, ¶¶ 45-47. The City's Statement of Undisputed Facts, ¶¶ 91-96. |
| 150. On December 15, 2017, Plaintiff was questioned by Mary Johnson about the conversation he had with the Meisters and the conversation he had with Anna Linn about Mayor Wood. Stockwell and one of the City Attorneys sat in on the meeting | 150. DISPUTED.<br><br>The deposition testimony that Plaintiff cites does not state that during the December 15, 2017 interview that he was being subjected to disparate treatment |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| feeding questions to Ms. Johnson. Plaintiff reported, during this meeting, that he believed he was subjected to disparate treatment because of his race.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 61:17 – 62:21, 85:6-22, 108:2-7 | because of his race.<br><br>Plaintiff Dep., 61:17-62:21; 85:6-22; 108:2-7. |
| 151. On the morning of December 18, 2017, Plaintiff was called out to assist the Police Department with a raid on an illegal marijuana growing operation in the City. Later that day, Plaintiff was terminated by Interim City Manager Stockwell and given a notice of termination that only indicated that he had failed to successfully complete his probationary period. Stockwell did not provide Plaintiff with any other basis for the decision to terminate his employment. However, Stockwell told City staff that he did not approve of Plaintiff's participation in the raid.<br><br>Defendant's Ex. D, Plaintiff's Termination Letter. O'Connell Decl., ¶ 5, Linn Depo., 181:14-18. Declaration of Jeremy Kosick ("Kosick Decl."), ¶ 9 | 151. UNDISPUTED.<br><br>For the purposes of the Motion for Summary Judgment, the City does not dispute this assertion. |
| 152. Immediately after Plaintiff was terminated on December 18, 2017, Stockwell met with Fire Marshal Jeremy Kosick to tell him he would be Acting Fire Chief. Stockwell instructed Kosick to give expectations to marijuana businesses that the Fire Department did not give to other businesses. During the conversation Kosick became concerned that Stockwell's intent was to instill fear of retaliation in Kosick so that he would agree to allow unsafe business practice in | 152. OBJECTION: Inadmissible Expert Opinion.<br><br>Federal Rule of Civil Procedure Rule 26(a)(2) provides that a party must disclose to the other parties the identify of any witness it may use at trial to present expert opinions. Plaintiff has failed to identify Jeremy Kosick as an expert as required by Rule 26(a)(2). As a result, any testimony regarding Kosick's interpretation of the California Fire Code is |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| violation of the building and fire codes. Kosick Decl., ¶¶ 7 – 10 | inadmissible. |
| 153. The only people in the City supportive of Stockwell terminating the Plaintiff were Mayor Wood and Jeannie O'Laughlin. O'Connell Decl., ¶ 5, Linn Depo., 160:4-9 | 153. OBJECTION: Lack of Foundation, Hearsay, and Relevance. Plaintiff's assertion is an overbroad generalization for which he cannot lay a foundation, must rely on inadmissible hearsay, and is otherwise not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 154. The City received numerous complaints from members of the public about Plaintiff being terminated and at the December 28, 2019 – City Council Meeting, citizens expressed outrage over the Plaintiff's termination. O'Connell Decl., ¶ 5, Linn Depo., 162:2-9 | 154. UNDISPUTED. |
| 155. A community meeting of approximately 50 – 100 people was later held at Victory Baptist Church. Stockwell was in attendance and by the conclusion of the meeting he agreed to reconsider his decision to terminate the Plaintiff. Golds Decl., ¶ 3, Stockwell Depo., 117, 147:21 – 150:25, 161:11 -164:1 Orchid Decl., ¶ 19, Ex. 18, Stockwell reconsiders termination of Chief Vincent, later sticks with his decision, Mojave Desert News | 155. UNDISPUTED. |
| 156. On January 7, 2018, Plaintiff met with Robert Stockwell at Stockwell's residence. Stockwell refused to explain the reasons for | 156. DISPUTED IN PART. The City has submitted several facts related to this incident that |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| Plaintiff's termination. However, Stockwell said Plaintiff accused Stockwell of being racist, and raised the issue of Plaintiff insisting cannabis growing operations put sprinklers in their facilities.  Stockwell told Plaintiff that the Fire Code is not the law, it is only a recommendation, and that, as the Fire Chief, Plaintiff could make exceptions for the cannabis industry, allowing them to build growing facilities without sprinklers. Plaintiff insisted that the City had adopted, and must follow, the California Fire Code. Following the meeting Stockwell decided not to reinstate Plaintiff.<br><br>Golds Decl., ¶ 5, Plaintiff Depo., 166:1 -169:9. Golds Decl., ¶ 3, Stockwell Depo., 147:21 -157:8 | contradict the assertion provided here.  Relevant here, the Parties stipulated to the following testimony by Plaintiff:<br><br>*I apologized to him for anything I may or may not have done to offend him, to make him rise up to this reason.  He clearly stated at the beginning of the meeting that he would not discuss or tell me why I was terminated, and he would never tell me why I was terminated.*<br><br>*And that he went into – he asked me how I think I can fix the problem of people now thinking he's a racist for firing me; and that that's an issue that I created and that how would I be able to fix that issue.*<br><br>Notably, Stockwell testified during his deposition that Stockwell believed that the first time that Plaintiff accused him of being a racist was "[i]n the media after his termination.<br><br>Stipulated Statement of Undisputed Facts, ¶¶ 56-58. Stockwell Dep., 152:11-12. |
| 157.  In February 2018, Plaintiff was interviewed by the Grand Jury. Following this interview the Grand Jury completed three separate reports: The Tale of a City, Code Red, and High Hopes for the Cannabis Industry.<br><br>Orchid Decl., ¶ 5, Ex. 3, Grand Jury Recomm. Tale of a City. Orchid Decl., ¶ 7, Ex. 5, Grand Jury Recomm. High Hopes for the Cannabis Industry. Orchid Decl., ¶ 8, Ex. 6, Grand Jury Recomm. Code Red | 157.  OBJECTION: Lack of Foundation.<br><br>Plaintiff has not properly sought to introduce the documents on which this fact relies.<br><br>UNDISPUTED.<br><br>For purpose of this Motion for Summary Judgment, the City does not dispute this fact.  The City reiterates, however, that Plaintiff's participation and influence over the Grand Jury investigations impacts the trustworthiness of those reports |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

| **Plaintiff's Disputed Fact & Supporting Evidence** | **The City's Response & Supporting Evidence** |
|---|---|
| | and their admissibility. |
| 158. The Grand Jury recommended that the City cease and desist harassment of City employees who act as whistleblowers, and/or shared information with the Grand Jury.<br><br>Orchid Decl., ¶ 5, Ex. 3, Grand Jury Recomm. 6, Tale of a City, pg. 9, findings 20-21 | 158. OBJECTION: Lack of Foundation, Hearsay, and Relevance.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Confidential Investigation Report prepared by Steven Chiari. Moreover, the report itself and the allegations on which Plaintiff attempts to rely are unattested for hearsay and hearsay within hearsay, each of which is inadmissible. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 159. The Grand Jury later found that harassment and retaliation by City officials continued.<br><br>Orchid Decl., ¶ 8, Ex. 6, Grand Jury Recomm. 1, Code Red, pgs. 37, 40, finding 1 | 159. OBJECTION: Lack of Foundation, Hearsay, and Relevance.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Confidential Investigation Report prepared by Steven Chiari. Moreover, the report itself and the allegations on which Plaintiff attempts to rely are unattested for hearsay and hearsay within hearsay, each of which is inadmissible. In addition, this fact is not relevant to the present lawsuit or the instant Motion for Summary Judgment. |
| 160. On February 1, 2018, Plaintiff filed a government tort claim. On April 21, 2018, Plaintiff filed his original complaint in the present case. On June 5, 2018, Plaintiff obtained a right to sue from the Department of Fair Employment and Housing and on July 27, 2018 Plaintiff filed his First Amended Complaint to include race | 160. UNDISPUTED. |

| Plaintiff's Disputed Fact & Supporting Evidence | The City's Response & Supporting Evidence |
|---|---|
| discrimination. | |
| Orchid Decl., ¶ 20, Ex. 19, Right to Sue Notice | |
| 161. There is poor morale within the City, and citizens and employees have expressed distrust of Mayor Wood.<br><br>Orchid Decl., ¶ 3, Ex. 1, Confidential Investigation Report Cal City bates no. 00318 | 161. OBJECTION: Lack of Foundation and Hearsay.<br><br>Plaintiff has not properly sought to introduce the document on which this fact relies, a Confidential Investigation Report prepared by Steven Chiari. Moreover, the report itself and the allegations on which Plaintiff attempts to rely are unattested for hearsay and hearsay within hearsay, each of which is inadmissible. |

Dated:     July 11, 2019

BEST BEST & KRIEGER LLP

By: _____
     HOWARD B. GOLDS
     THOMAS M. OCONNELL
     Attorneys for Defendant
     CITY OF CALIFORNIA CITY

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CA 92502

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I hereby certify that on July 11, 2019, I electronically filed with the Clerk of

3

the Court for the United States District Court, Eastern District of California, using

4

the CM/ECF system, the following document:

5

**THE CITY OF CALIFORNIA CITY'S OBJECTIONS AND RESPONSES**
**TO PLAINTIFF JUSTIN VINCENT'S STATEMENT OF DISPUTED FACTS**
**AND PLAINTIFF JUSTIN VINCENT'S RESPONSE TO THE CITY OF**
**CALIFORNIA CITY'S STATEMENT OF UNCONTROVERTED FACTS**
**AND CONCLUSIONS OF LAW**

6

7

8

All registered CM/ECF users in this case, including the following, will be

9

served with the foregoing document by receiving a notification of such filing

10

(NEF) and a hyperlink to said document, by the court's CM/ECF system:

11

12

Ronald P. Ackerman                          Attorneys for Plaintiff,
Oshea V. Orchid                             Justin Vincent
PUBLIC EMPLOYEES LEGAL, LLP
3415 S. Sepulveda Boulevard, Suite 660
Los Angeles, California 90034

13

14

15

Telephone: (310) 649-5300
Facsimile: (310) 853-6945
E-mails: ron@publicemployees.legal
oshea@publicemployees.legal

16

17

18

I declare that I am employed in the office of a member of the bar of this court

19

at whose direction service was made.

20

Executed on July 11, 2019, at Riverside, California.

21

22

Ana Horta

23

24

25

26

27

28